## ARKANSAS POWER & LIGHT CO. v. FEDERAL POWER COMMISSION.

### No. 12065.

Circuit Court of Appeals, Eighth Circuit.

March 2, 1942.

R. A. Henderson, of New York City, and W. H. Holmes, of Little Rock, Ark. (C. Hamilton Moses, of Little Rock, Ark., E. Nobles Lowe and Robert B. Garnett, both of New York City, House, Moses & Holmes, of Little Rock, Ark., and Reid & Priest, of New York City, on the brief), for petitioner.

Charles V. Shannon, Sp. Counsel for Federal Power Commission, and Wallace H. Walker, Asst. Gen. Counsel, both of Washington, D. C. for Federal Power Commission (Louis W. McKernan, Principal Atty. for Federal Power Commission, T. John Butler, Veida Morrow, and Francis J. Walsh, all of Washington, D. C., on the brief), for respondent.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is a proceeding under § 313(b) of the Federal Power Act, 49 Stat. 860, 16 U.S.C.A. § 825*l*(b), to review two orders of the Federal Power Commission, one dated March 21, 1941, and the other one May 3, 1941, as amended May 27, 1941.

The petitioner, an Arkansas corporation engaged in generating, transporting and selling electric power and energy, is the holder of a license issued by the Commission February 7, 1923, for the construction and operation of a hydroelectric project on the Ouachita river in Arkansas. The "project", under the provisions of the

license, consisted of three "separable parts", each part consisting of a dam and power house and the ultimate installation of hydroelectric units. Two dams had been completed and put in operation prior to the commencement of this proceeding. The original license provided that the third dam, known as the Blakely dam (the only one involved in this proceeding) should be begun on or before July 1, 1933, and completed on or before July 1, 1936. The license has twice been amended. The last amendment made on July 1, 1935, changed the commencement date for the Blakely development to December 31, 1936, and the completion date for the first installation to December 31, 1939.

The order of March 21, 1941, was entered upon an amended application by the petitioner filed November 14, 1939, for an order to postpone indefinitely the construction and completion of the Blakely development. The application was denied. The denial was based upon findings that the license requirements for construction had not been satisfied; that the licensee had not shown when, if ever, it proposed to construct or complete the Blakely development; and that it would be inconsistent with the public interest and contrary to the provisions of the Act to grant the request for indefinite postponement of the construction and completion of the Blakely development.

On April 17, 1941, the petitioner filed an application (1) for rehearing, (2) for further postponement of the construction and completion of the Blakely development, and (3) for permission to construct a steam electric plant. By its order of May 3, 1941, as amended by its order of May 27, 1941, the Commission (1) denied the application for rehearing, (2) terminated petitioner's license effective September 1, 1941, and (3) dismissed the applications for further postponement and for permission to construct a steam electric plant.

In its brief in this court the petitioner contends that:

1. The order terminating the Blakely license is not supported by the evidence and is contrary to law, in that the record shows that (a) construction work on the project was commenced within the time prescribed; (b) petitioner could not have proceeded further with construction work without violating the license until a definite plan was approved by the Commission; (c) by the Flood Control Act of 1938, 52 Stat. 1215, 33 U.S.C.A. § 701b et seq., Congress in effect ratified petitioner's license; and (d) the Commission is barred by law and by equity from terminating the license.

2. The denial and dismissal of the application for the postponement of the time for construction was arbitrary, opposed to the public interest, and in disregard of the duty of the Commission.

3. Petitioner is the proper party to construct the Blakely development.

The first and important point for decision is whether the Commission was legally justified in terminating the license. If it were so justified, the complaint that the Commission erred in refusing to grant an extension of the time for commencement and completion of the development is moot. Section 13 of the Federal Power Act, 16 U.S.C.A. § 806, among other provisions, reads:

"In case the licensee shall not commence actual construction of the project works, or of any specified part thereof, within the time prescribed in the license or as extended by the commission, then, after due notice given, the license shall, as to such project works or part thereof, be terminated upon written order of the commission."

The question for consideration is whether the petitioner had commenced "actual construction of the project works, or any specified part thereof, within the time prescribed in the license" as extended, within the meaning of the statute. The contention of petitioner is that it had done so.

The Act furnishes its own glossary. Subsection (12) of section 3, 16 U.S.C.A. § 796(12), reads, "(12) 'project works' means the physical structures of a project"; and subsection (11) of said section 3 reads:

"(11) 'project' means complete unit of improvement or development, consisting of a power house, all water conduits, all dams and appurtenant works and structures (including navigation structures) which are a part of said unit, and all storage, diverting, or forebay reservoirs directly connected therewith, the primary line or lines transmitting power therefrom to the point of junction with the distribution system or with the interconnected primary transmission system, all miscellaneous structures used and useful in connection with said unit or any part thereof, and all water-rights, rights-of-way, ditches, dams, reservoirs, lands, or interest in lands the

use and occupancy of which are necessary or appropriate in the maintenance and operation of such unit."

The Commission found that "The applicant [petitioner] has performed certain preliminary work on the Blakely development incidental to initiation of actual construction as provided in the license but has not commenced construction of the Blakely development." This is a fact the finding of which is committed to the Commission and not to the court. Section 313(b) of the Act, 16 U.S.C.A. § 825l(b), provides that upon review by the court, "The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive."

The amount and character of the work done is not in dispute.

█ C. S. Lynch, chief engineer and a director of the petitioner, testified upon the hearing:

"Q. You said you had spent something like $10,000 on clearing the dam site. Is that correct? A. About $10,000 on excavation and other stuff, and clearing and surveys, and on grading work on the proposed road to the site.

"Q. That is all included in the $10,000? A. Yes, sir.

"Q. Now what actual excavation work on the site itself has been carried on. A. We have excavated several thousand yards down there, probably 10,000 or 12,000 yards at the base of the dam."

In answer to another question the witness testified, "We have made a thorough examination of the foundation conditions with necessary core drillings and exploration trenches. * * * We have cleared the site on both sides of the river. * * * We have arranged for the necessary roads. In addition we have laid out a railroad spur to the site and have excavated a small portion of the foundation. We have worked out arrangements with a large sawmill for transportation of material to the neighborhood of the dam site and thus avoided the necessity of building several miles of railroad."

The purpose of this work is shown by a statement in an exhibit introduced in evidence by petitioner which reads in part, "* * * in November, 1936, the licensee began preliminary construction operations at Blakely for the purpose of effecting legal compliance with article 4(a) of the license as amended which required that construction be commenced prior to December 31, 1936."

In view of petitioner's purpose in expending about $10,000 for drillings, clearing land and excavating exploration trenches in the fall of 1936, the argument is not compelling that it was intended at that time to proceed with the construction of the dam. This conclusion is strengthened by two other relevant facts appearing in the record. One of these facts is that the estimated cost of the construction ranges from $3,065,000 to $7,792,000. The other is that the request for an extension of time for the commencement and completion of the Blakely development is until it shall be found to be economically advisable to do so and until an agreement can be reached with the government for the construction of a multiple purpose dam, that is a dam for improvement of navigation, for flood control, and for power purposes. No definite time for such a determination of the date for the construction of the dam was fixed in the application. On this point Mr. Lynch testified:

"In my opinion, the only way that the people of the Ouachita River Valley are going to get flood control from the Blakely Dam is through its construction as a cooperative development jointly by Arkansas Power & Light Company and the Federal Government, such as we are now asking this Commission to approve. The two agencies working together will sooner or later build the dam. Neither agency working separately will likely ever build it, if reasonable economics are considered."

When asked for his personal estimate as to the time when the Blakely dam should be built he said:

"Well, I think we won't need any plants for three or four years, and I don't know whether at that time this will fit or not. It may be—I would say, at the outside, ten years would be my guess at it, from what we can see in the future. That again will depend to some extent, to developments that are coming on. I am saying this on the basis that there would be just one or two of them, and if there is a whole flock of them, as there may possibly be, then it would put it off still further."

"Q. It would be somewhere between three and four years and ten years, as you presently view the situation? A. It will be three or four years before we will need anything, and then after that, why, this

might be justified, and it might not depending on what other sources are available.

"Q. But certainly within ten years? A. I think it would probably be built within ten years."

This evidence warrants the finding of the Commission that the "preliminary work" done by petitioner in the fall of 1936 was "incidental" only "to the initiation of actual construction" and that it was not the commencement of "construction of the Blakely development." The evidence warrants the further inference that the petitioner regarded the work done only as incidental to and not as an actual commencement of construction. The court cannot say upon this record that the finding is not supported by substantial evidence nor that the Commission's action was arbitrary and unreasonable.

When the fact was established that petitioner had not commenced the actual construction of the project works within the time prescribed by the license it was the duty of the Commission under § 13 of the statute, supra, to terminate the license, unless one or more of the excuses for such failure argued by the petitioner constitute grounds for ignoring the statute and compel a different conclusion.

The first excuse argued is that the petitioner could have proceeded no further with construction work without avoiding article 3 of the license as amended until a definite project plan was approved by the Commission. This claim is in the nature of a plea in confession and avoidance. Such a claim is inconsistent with petitioner's principal contention that the dam should not be constructed for from three or four to ten years, probably longer. It is consistent only with the finding that the work done was not done in good faith but for the purpose only of "effecting legal compliance with article 4(a) of the license." The inference that the work was stopped when it was believed the purpose for which it was done had been accomplished is a legitimate deduction from the evidence. This situation considered in connection with the whole record supports the finding of the Commission that the petitioner has not "shown any satisfactory reason for its failure to comply with the terms of the license, as amended, with respect to the construction of the Blakely development."

The next contention is that the Flood Control Act of 1938, 52 Stat. 1215, in effect approved, confirmed and ratified petitioner's license, wherefore it is argued that the Commission could not or should not terminate such license. The short answer to this contention is that the Act of 1938 does not refer to the petitioner nor to its license. The Act authorizes the Secretary of War and the Chief of Engineers to participate in the construction of a multiple purpose dam at the Blakely site to the extent of not more than $2,000,000, but it says nothing about co-operation with the petitioner, makes no reference to its license, and places no restrictions on the powers and discretion of the Commission.

Finally, it is insisted that the Commission is barred and estopped from terminating petitioner's license. The grounds of the alleged estoppel are: (1) that petitioner was prevented from constructing the dam (a) by the practical aspects of the situation and (b) legally from continuing the construction in 1937 because no definite project plans had at that time or since been approved by the Commission and the Division Engineer whose approval was required by the license issued in 1923, as amended; (2) that the Commission had knowledge of the alleged fact that petitioner had since 1923 expended for land and other things on the Blakely development more than $1,600,000 and more than $10,000,000 including the cost of the other two dams constructed under the license; (3) delay of the Commission in acting upon petitioner's applications for extension of time; (4) delay in terminating the license to construct the Blakely dam; (5) the passing of the Flood Control Act of 1938 by Congress; and (6) the delay of the Commission in mentioning the failure of petitioner to commence construction work for nearly four years after the date fixed in the license as amended.

That all of these things together are insufficient to constitute an estoppel is scarcely debatable. The Ouachita river in Arkansas is by the terms of the license a navigable stream. In the exercise of the commerce power under the Constitution Congress enacted the Federal Power Act and the Flood Control Act of 1938, supra, to regulate the construction of dams for power and flood control purposes in navigable streams. The Federal Power Commission is one of the instrumentalities created by Congress for administering those Acts. Petitioner's license to construct the Blakely dam was originally issued under the Federal Power Act approximately fifteen years be-

fore the enactment of the Flood Control Act of 1938. The license contained a specific reservation making it subject to the regulations of the Commission and to the provisions of the Act. No case has been cited by the petitioner holding that such a government agency is subject to an estoppel in pais, and we believe none can be found to sustain an estoppel upon the grounds here asserted. It is not claimed that Congress was without power to énact the Flood Control Act of 1938 nor that the Act was prejudicial to the rights granted by the license. No vested rights under the license have been unlawfully, fraudulently or wrongfully destroyed. The alleged expenditures made by petitioner were made with the full knowledge of the law and of the regulations of the Commission. No deceit or misrepresentations are charged, except by inference. There can be no estoppel on any of the grounds alleged. Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791; Louisville Bridge Co. v. United States, 242 U.S. 409, 37 S.Ct. 158, 61 L.Ed. 395; Newport & Cincinnati Bridge Co. v. United States, 105 U.S. 470, 26 L.Ed. 1143; Pennsylvania Water & Power Co. v. Federal Power Commission, App.D.C., 123 F.2d 155.

Since the Commission rightfully and in obedience to the mandate of the statute terminated petitioner's license to construct a power dam at the Blakely site the application for extension of time in which to commence and complete the project works at that point was not arbitrarily denied. The orders under review are affirmed.