**James D. MADDLE et al.,**

**v.**

**Henry Blume JOHNSON et al.**

**Civ. A. No. 10435.**

United States District Court
W. D. Louisiana,
Shreveport Division.

May 25, 1965.

Robert G. Pugh and Sydney B. Nelson, Shreveport, La., for plaintiff.

G. M. Bodenheimer, Jr., Bodenheimer, Looney & Jones, Alex F. Smith, Jr., Mayer & Smith, John L. Schober, Jr., Shreveport, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

Libellant, a resident citizen of this District, in this action seeks to recover damages *in personam* for his minor daughter and himself because of injuries sustained by the daughter in a motorboat accident which occurred on Lake Hamilton in Arkansas. Libellant contends that jurisdiction is vested in this court under the admiralty and maritime jurisdiction provided in 28 U.S.C.A. § 1333. Respondents likewise are domiciled in this District and division.

Respondents filed a motion to dismiss for failure to state a claim upon which relief can be granted, based upon their contention that this action is not within the admiralty and maritime jurisdiction of this Court, since the accident did not occur upon navigable waters of the United States. It is settled that the admiralty and maritime jurisdiction of the United States includes all navigable waters within the country. Southern Steamship Co. v. National Labor Relations Board, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246 (1942); The Propeller Genesee Chief, 12 How. 443, 13 L.Ed. 1058 (1851).

Lake Hamilton is formed by Carpenter Dam, built across the Ouachita River near Hot Springs, Arkansas. The source of the Ouachita is in the Ouachita Mountains in Arkansas, and it flows through Arkansas and Louisiana to its confluence with the Black and Red Rivers in Concordia Parish, Louisiana, thence into the

Mississippi. There are three dams on the Ouachita River. In addition to Carpenter Dam, Blakely Dam forms Lake Ouachita to the North of Lake Hamilton, and Remmel Dam forms Lake Catherine to the South of Lake Hamilton. No locks or other conveyances are available for transporting water craft around or through any of these dams.

■ All parties agree that the test of navigability is that stated in The Daniel Ball, 10 Wall. 557, 563, 19 L.Ed. 999 (1870):

> "Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And *they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce,* over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, *when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States* or foreign countries in the customary modes in which such commerce is conducted by water." (Emphasis added.)

■ In The Montello, 20 Wall. 430, 441, 22 L.Ed. 391 (1874) the Court further defined navigable waters:

> "It would be a narrow rule to hold that in this country, unless a river was capable of being navigated by steam or sail vessels, it could not be treated as a public highway. The capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river, rather than the extent and manner of that use. *If it be capable in its natural state of being used for purposes of commerce,* no matter in what mode

the commerce may be conducted, *it is navigable in fact,* and becomes in law a public river or highway." (Emphasis added.)

The test of navigability set forth in The Daniel Ball, supra, has been followed not only in admiralty and maritime cases, but also in cases dealing with the authority of the Federal Power Commission to regulate the construction of dams which will obstruct navigable waters of the United States. See United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940); Montana Power Co. v. Federal Power Commission, 87 U.S.App.D.C. 316, 185 F.2d 491 (1950). See also Economy Light & Power Co. v. United States, 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847 (1921). A third area in which this test of navigability has been applied is that dealing with ownership of land forming the beds of navigable waters. See United States v. State of Utah, 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844 (1931); United States v. Holt State Bank, 270 U.S. 49, 46 S.Ct. 197, 70 L.Ed. 465 (1926); Brewer-Elliott Oil & Gas Co. v. United States, 260 U.S. 77, 43 S.Ct. 60, 67 L.Ed. 140 (1922); State of Oklahoma v. State of Texas, 258 U.S. 574, 42 S.Ct. 406, 66 L.Ed. 771 (1922); State of Utah v. United States, 304 F.2d 23 (10 Cir. 1962).

Although there is agreement as to the test of navigability to be applied, difficulty is encountered when the test is applied to different factual situations. In determining the navigability in fact of a particular body of water, the peculiar circumstances of each particular case must be considered.

Respondents contend that only the present navigability of Lake Hamilton should be considered and that due to the three dams on the Ouachita River, those waters cannot be considered navigable in fact. They emphasize that, due to the absence of locks, the only way water craft can navigate the entirety of the Ouachita River is by portage—to remove the craft from the water at each of the dam sites and transport craft and/or cargo overland around the dams.

But, in Economy Light & Power Co. v. United States, supra, the Supreme Court said:

"The fact, however, that artificial obstructions exist capable of being abated by due exercise of the public authority, does not prevent the stream from being regarded as navigable in law, *if,* supposing them to be abated, *it be navigable in fact in its natural state."* (256 U.S. at 118, 41 S.Ct. at 411.) (Emphasis added.)

Moreover, after approving the test of navigability set forth in The Daniel Ball, supra, the court stated:

"We concur in the opinion of the Circuit Court of Appeals that a river having actual navigable capacity in its natural state and capable of carrying commerce among the states is within the power of Congress to preserve for purposes of future transportation, even though it be not at present used for such commerce, and be incapable of such use according to present methods, either by reason of changed conditions or because of artificial obstructions." (256 U.S. at 123, 41 S.Ct. at 413).

It also was stated in United States v. Appalachian Electric Power Co., supra, that once a waterway is found to be navigable, it remains navigable as a matter of admiralty law. See also Economy Light & Power Co. v. United States, supra.

In accordance with these authorities we must consider whether the Ouachita River in its natural or ordinary state is or was capable of being used as a highway for commerce. We find the affidavits and other evidence submitted by libellant are more than sufficient to show that the Ouachita River has such capabilities. The affidavit of the Executive Vice President of the Ouachita River Valley Association states that navigation on the river is considered to start at mile 532, which is well above Lake Hamilton. The affidavits of the Manager of the Chamber of Commerce of Malvern, Arkansas, and of another person familiar with the Ouachita River also show that the river is navigable. Likewise the Federal Power Commission has referred to the Ouachita as a "navigable waterway" in the general area in question, in proceedings conducted as long ago as 1922 and 1923; and one affidavit indicates that keel boats of the Lewis and Clark expedition navigated the river in the vicinity of Hot Springs, only 9 miles from Lake Hamilton, as early as 1804.

In addition to this uncontradicted evidence libellant relies on Arkansas Power & Light Co. v. Federal Power Commission, 125 F.2d 982 (8 Cir. 1942) in which the court stated that the Ouachita River, by the terms of the license there involved, is a navigable stream. We note particularly that there the court was considering a license for the construction of Blakely Dam, and the court stated that two other dams already had been built on the Ouachita River. Since there are only three dams on that river in Arkansas, the court's statement that the Ouachita River is navigable was made after Lake Hamilton had been created by the construction of Carpenter Dam.

In light of these facts and authorities we conclude that Lake Hamilton is a part of the navigable waters of the United States. Support for that conclusion also is found in Loc-Wood Boat & Motors, Inc. v. Rockwell, 245 F.2d 306 (8 Cir. 1957), a case also cited by libellant, in which the court exercised its admiralty and maritime jurisdiction over the Lake of the Ozarks, a lake created by the Bagnell Dam in the Osage River and lying entirely in the State of Missouri, after finding it to be part of the navigable waters of the United States.

Upon careful consideration of the authorities cited by respondents, we think a different result is not indicated. For example, Shogry v. Lewis, 225 F.Supp. 741 (W.D.Pa.1964), relied on by respondents, is distinguishable from the case at bar in that the lake under consideration there was landlocked and was not part of a navigable stream; nor was it connected to any navigable waters. Likewise, Johnson v. Wurthman, 227 F.Supp. 135 (D.C.

Or.1964) may be distinguished on its facts, since the lake under consideration there was only three miles long by one mile wide and had no outlets that could be considered navigable. In re Howser, 227 F.Supp. 81 (W.D.N.C.1964) likewise is inapposite, since there the court noted that the Federal Power Commission had found that the Catawba River was not navigable at the point under consideration by the court. Other cases cited by respondents likewise have distinguishable features.

For these reasons we find that Lake Hamilton is part of the navigable waters of the United States over which this Court has admiralty and maritime jurisdiction under 28 U.S.C.A. § 1333. Therefore, respondents' motion to dismiss is denied.