Argued November 20, 1957, affirmed January 22, petition for
rehearing denied February 18, motion to stay mandate
allowed February 18, 1958, on appeal to
United States Supreme Court

# HAHN *v.* ROSS ISLAND SAND & GRAVEL CO.

320 P. 2d 668

[ 1 ]

2

*Dwight L. Schwab* argued the cause for appellant. On the briefs were Hutchinson, Schwab & Burdick and John H. Buttler, Portland.

*Arno H. Denecke* argued the cause for respondent. On the brief were Mautz, Souther, Spaulding, Denecke & Kinsey, Portland.

LUSK, J.

This is a personal injury action under the Oregon Employers' Liability Act in which the court set aside a

verdict for the plaintiff and entered judgment for the defendant notwithstanding the verdict. The plaintiff has appealed. The action of the trial court was based upon the view that plaintiff's sole remedy is under the Longshoremen's and Harbor Workers' Compensation Act (33 USC, Title 33, §§ 901 et seq.). This ruling presents the only question on this appeal.

The defendant is an Oregon corporation which operates a sand and gravel business on the Willamette River in Portland. It conducts dredging operations with the use of a dredge, barges and power-driven machinery in a portion of the river referred to in the testimony as a lagoon—a small bay or inlet roughly rectangular in shape, the entrance to which from the main body of the river is at the north. Otherwise, it is surrounded by land—Ross Island on the west, Hard Tack Island on the east, and a strip of land on the south connecting the two.

On the day that plaintiff was injured, March 23, 1955, and for some eight days prior thereto, he was employed by the defendant as an "oiler." His general duties were on a dredge anchored to the shore, which was used to scoop out sand and gravel from the bottom of the lagoon and dump it on a barge. He looked after the machinery of the dredge and operated a winch to move the barge into position. If there was a breakdown in the machinery it was his duty to repair it. The barge, when filled, was moved to the crusher, which was located inside of the lagoon, and, after the gravel was crushed, it was carried by means of a conveyor belt to the defendant's plant on the right bank of the river. He was injured, however, while performing a different type of work. He was ordered to assist in transferring a large gravel bin or hopper, used for loading sand and gravel into trucks, from one barge to

another. The hopper was so constructed that trucks could be driven under it to receive their loads. A power-driven crane on shore was employed to pick up the hopper and move it. After the hopper was moved and stowed it became the plaintiff's job to go to the top of the hopper by means of a ladder nailed to the hopper and loosen a cable used in the moving operation. He had climbed high enough to reach the top rung of the ladder with his hand when the ladder gave way, and he fell a distance of about eight or ten feet, landing on his back on hard-packed sand in the barge and receiving serious injuries. The ladder fell upon him. The evidence shows that the ladder, which was constructed of heavy timbers, was fastened to the hopper only by nails which had been driven into wood that was rotten. No bolts or chains were used to make it secure, although it was practicable to use them. There seems to be no question about the negligence of the defendant or its violation of the provisions of the Employers' Liability Act.

In 1927 Congress passed the Longshoremen's and Harbor Workers' Compensation Act in order to provide compensation irrespective of fault for injury or death in the case of employees of employers "any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock)." USC, Title 33, § 902 (4). Section 903 (a) provides in part:

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

Liability of an employer as prescribed by the Act is made exclusive, but, if any employer fails to secure payment of compensation as required by the Act, an injured employee, or his legal representative in case death results from the injury, is given an election to claim compensation or to maintain an action at law or in admiralty for damages, in which case the defenses of negligence of a fellow servant, assumption of risk, and contributory negligence are not available to the employer. § 905

The defendant had secured payment of compensation as required by the federal Act, § 932, but had exercised its election not to be subject to the Workmen's Compensation Law of this state (ORS 656.022).

It is contended first, on the part of the plaintiff, that the injury did not occur upon "navigable waters of the United States," but as to this we think that there can be little doubt. The body of water upon which the injury occurred is a portion of the Willamette River, which is concededly a navigable stream. *Willamette Iron Bridge Co. v. Hatch,* 125 US 1, 8 S Ct 811, 31 L ed 629; *Port of Portland v. Reeder,* 203 Or 369, 280 P2d 324. Tugs, the largest of which has a draft of nine feet, ply in and out of the lagoon. The hopper upon which plaintiff met with his injury was towed in a barge by tug owned and operated by the defendant to the lagoon from Sun Dial Beach on the Sandy River, a tributary of the Columbia River, and afterwards was taken by the same means to Cathlamet on the Columbia River in the state of Washington. The tug referred to was 50 feet long. It was used to tow sand and gravel "from one job to another," going at times to Ilwaco, Washington, about three miles from the mouth of the Columbia River and up the Columbia as far as the Bridge of the Gods.

The test for determining what are navigable waters of the United States was thus stated by Mr. Justice Field in The Daniel Ball, 77 US 557, 563, 19 L ed 999:

"* * * The doctrine of the common law as to the navigability of waters has no application in this country. Here the ebb and flow of the tide do not constitute the usual test, as in England, or any test at all of the navigability of waters. There no waters are navigable in fact, or at least to any considerable extent, which are not subject to the tide, and from this circumstance tide water and navigable water there signify substantially the same thing. But in this country the case is widely different. Some of our rivers are as navigable for many hundreds of miles above as they are below the limits of tide water, and some of them are navigable for great distances by large vessels, which are not even affected by the tide at any point during their entire length. A different test must, therefore, be applied to determine the navigability of our rivers, and that is found in their navigable capacity. Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water."

See, also, *Crowell v. Benson*, 285 US 22, 55, 52 S Ct 285, 76 L ed 598; *Dailey v. City of New York*, 128 Fed

796 (SD NY 1904) ; 1 Benedict on Admiralty (6th ed) 94-96.

■ The evidence discloses that the body of water in question fully meets this test. It is navigable in fact and therefore in law, and forms "by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water." The fact that the defendant owns the land partially surrounding the lagoon does not militate against this conclusion. *United States v. Chicago, M & St. P. & P. R. Co.,* 312 US 592, 596-597, 61 St Ct 772, 85 L ed 1064. The government has drawn harbor lines around the land, but whether water is inside or outside harbor lines is not a test of navigability. See *Port of Portland v. Reeder, supra. People v. The Commissioners of Land Office,* 202 App Div 240, 196 NYS 115, cited by the plaintiff, is not in point. Other facts to which plaintiff calls attention, such as that the defendant has no permit from any governmental authority to dredge sand in the lagoon; that it has enlarged the area of the lagoon and diminished that of the land; that it charges owners of log rafts for the privilege of parking them in the lagoon; and has erected therein piling and structures which may constitute obstructions to navigation, we believe to be irrelevant.

■ We are brought thus to the question of the application to this case of the Longshoremen's and Harbor Workers' Act of 1927. This is a question of federal law and the decisions of the Supreme Court of the United States are, of course, controlling.

Ten years before the Longshoremen's and Harbor Workers' Act was passed the Supreme Court reversed a judgment of the New York Court of Appeals which

sustained an award of compensation under the New York Compensation Law to the widow and children of one Jensen, who was accidentally killed while working as a stevedore unloading cargo from a vessel berthed in the North River, navigable waters of the United States. *Southern Pacific Co. v. Jensen,* 244 US 205, 37 S Ct 524, 61 L ed 1086, LRA 1918C 451, Ann Cas 1917E 900 (1917). The reasoning of the court was as follows: Article III, § 2, of the Constitution, extends the judicial power of the United States "to all cases of admiralty and maritime jurisdiction," and Article I, § 8, confers upon Congress the power "To make all laws which may be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof." Pursuant to this provision Congress enacted the Judiciary Act of 1789, which gives to the district courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction; * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." Congress has the power to fix and determine maritime law throughout the country, and, in the absence of a controlling statute, general maritime law, as accepted by the federal courts, is applicable to matters within the maritime and admiralty jurisdiction. The work in which Jensen was engaged, his contract of employment, and his injuries were all maritime, and the rights and remedies of the parties were within the maritime jurisdiction. Further, since the remedy of the Compensation Act was wholly unknown to the common law, it was not saved to suitors from the grant of exclusive jurisdiction in the Judiciary Act. It was therefore concluded that the New York statute, as attempted

to be applied, "works material prejudice to the characteristic features of the general maritime law [and] interferes with the proper harmony and uniformity of that law in its international and interstate relations."

This was a five to four decision, Justices Holmes and Pitney wrote dissenting opinions, both of which were concurred in by Justices Brandeis and Clarke. There has been considerable dissatisfaction with it both among commentators and in the Supreme Court itself, but it has never been overruled, and it was cited as recently as 1953 as controlling authority. *Pennsylvania Railroad Co. v. O'Rourke*, 344 US 334, 73 S Ct 302, 97 L ed 367.

Following the Jensen case Congress twice amended the Judiciary Act in endeavors to secure to maritime workers the benefits of state compensation laws.[1] Both amendments were held unconstitutional on the authority of the Jensen case. *Knickerbocker Ice Co. v. Stewart*, 253 US 149, 40 S Ct 438, 64 L ed 834, 11 ALR 1145 (1919); *Washington v. W. C. Dawson & Co.*, 264 US 219, 44 S Ct 302, 68 L ed 646 (1924).

Against this background, Congress enacted the Longshoremen's and Harbor Workers' Compensation Act. A great deal of litigation followed in which the question involved was whether, under the circumstances of the particular case, application of a state compensation law interfered "with the proper harmony and uniformity of" maritime law, the test laid down in the Jensen case. This history is reviewed in *Davis v. Department of Labor*, 317 US 249, 63 S Ct 225, 87

---

[1] The Act of October 6, 1917, added to the savings clause of the Judiciary Act of 1789 the following: "and to claimants the rights and remedies under the workmen's compensation law of any State." The Act of June 10, 1922, amended this new matter so as to read "and to claimants for compensation for injuries to or death of persons *other than the master or members of the crew of a vessel* their rights and remedies under the workmen's compensation law of any State," etc. (Italics added.)

L ed 246. See, also, *Nogueira v. N.Y., N.H. & H.R. Co.,* 281 US 128, 50 S Ct 303, 74 L ed 754; 2 Larson, Workmen's Compensation Law, pp 409-413; Gilmore and Black, The Law of Admiralty, pp 344-348. If the workman was injured in an employment considered to be "maritime but local," that is, only indirectly connected with navigation and commerce, recovery under a state compensation law was permissible. The rule was thus summarized in *Sultan Railway & Timber Co. v. Department of Labor and Industries,* 277 US 135, 137, 48 S Ct 505, 72 L ed 820 (1928):

> "It is settled by our decisions that where the employment, although maritime in character, pertains to local matters, having only an incidental relation to navigation and commerce, the rights, obligations and liabilities of the parties, as between themselves, may be regulated by local rules which do not work material prejudice to the characteristic features of the general maritime law or interfere with its uniformity. Grant Smith-Porter Co. v. Rohde, 257 U.S. 469; Millers' Indemnity Underwriters v. Braud, 270 U.S. 59; Alaska Packers Association v. Industrial Accident Commission, 276 U.S. 467."

Otherwise, the federal Act afforded the exclusive remedy, as provided in USC § 903. In many instances the problem of where to draw the line was extremely difficult, and fine distinctions were indulged so that it became well-nigh impossible in some instances to predict on which side of the line a particular case would fall. Two of the decisions of this court during this period are illustrative. In *Mark v. Portland Gravel Co.,* 130 Or 11, 278 P 986 (1929), the plaintiff was injured while working as engineer upon a dredge in the Columbia River, scooping up sand from the bed of the river and loading it on barges alongside for

purposes of sale. The "local concern" doctrine was applied, and the plaintiff's remedy held to be exclusively under the State Compensation Law. The court relied on *Grant Smith-Porter Ship Co. v. Rohde,* 257 US 469, 42 S Ct 157, 66 L ed 321, 25 ALR 1008 (1922), in which the Supreme Court of the United States held that an injury sustained by the plaintiff while working as a carpenter on an uncompleted vessel on the Willamette River was compensable under the Oregon Compensation Law. In *Martinson v. State Ind. Acc. Com.,* 154 Or 423, 60 P2d 972 (1936), the workman was, at the time of his injury, assisting in the loading of machinery on a barge moored to a wharf on the Willamette River at Portland. The barge, when loaded, was to be towed to Bonneville Dam on the Columbia River. This court held that the work in which the plaintiff was engaged was maritime in nature, under the rule that loading or unloading a vessel is not a matter of purely local concern (*Northern Coal & Dock Co. v. Strand,* 278 US 142, 49 S Ct 88, 73 L ed 232; *Employers' Liability Assurance Corp. v. Cook,* 281 US 233, 50 S Ct 308, 74 L ed 823), and that there could be no recovery under the State Compensation Law.

In 1941 the Supreme Court of the United States decided the case of *Parker v. Motor Boat Sales,* 314 US 244, 62 S Ct 221, 86 L ed 184. One Armistead was a janitor and handyman for a small store selling boats and maritime equipment. His work was almost entirely on land, but on the occasion in question he went out in a small motor boat on the James River, the boat capsized, and he was drowned. The boat was being operated by a fellow employee on a test run. Armistead's duty at the time was to keep a lookout for hidden objects in the muddy river. His widow was awarded compensation by the Deputy Commissioner under the

authority of the Longshoremen's and Harbor Workers' Act, the District Court affirmed, the Circuit Court of Appeals reversed, and the Supreme Court reversed the Circuit Court of Appeals and restored the original award.

As stated by Professor Larson, op cit 413:

"This decision by the highest court appeared to scrap the 'local' exception to maritime employment, for the relation to navigation and commerce of a casual and unauthorized ride in a tiny outboard motor boat might seem to approach the vanishing-point."

See, also, *Western Boat Bldg. Co. v. O'Leary,* 198 F2d 409, 414 (9th Cir 1952).

*Davis v. Department of Labor,* supra, however, decided in the following year, cast a different light on the matter, at least with respect to the application of state compensation laws to maritime injuries. The question there was upon the application of the compensation law of the state of Washington to the case of an injury resulting in death sustained by Davis, a structural iron worker whose employer was engaged in dismantling an abandoned drawbridge which spanned the Snohomish River, a navigable stream in the state of Washington. Davis was on a barge to which steel from the bridge had been lowered for carriage to a place of storage a short distance away. He was engaged in cutting pieces of steel into proper lengths for loading, and fell or was knocked into the stream and drowned. The Washington commission denied compensation and its ruling was affirmed by the Supreme Court of the state on the authority of *Jensen* and other United States Supreme Court decisions.

Without overruling the *Jensen* case the Supreme Court, in an opinion by Mr. Justice Black, held that

the decedent's widow could validly be compensated under the Washington law. The court, after reviewing the confusion in the decisions following in the wake of *Jensen* and the difficulties encountered by employer and employees upon whom pressed "the horns of the jurisdictional dilemma" said:

"Harbor workers and longshoremen employed 'in whole or in part upon the navigable waters' are clearly protected by this federal act; but employees such as decedent here, occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation." 317 US 253.

The court continued:

"There is, in the light of the cases referred to, clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act.

"Faced with this factual problem we must give great—indeed, presumptive—weight to the conclusions of the appropriate federal authorities and to the state statutes themselves. Where there has been a hearing by the federal administrative agency entrusted with broad powers of investigation, fact finding, determination, and award, our task proves easy. There, we are aided by the provision of the federal act, 33 U.S.C. § 920, which provides that, in proceedings under that act, jurisdiction is to be 'presumed, in the absence of substantial evidence to the contrary.' Fact findings of the agency, where supported by the evidence, are made final. Their conclusion that a case falls within the federal jurisdiction is therefore entitled to great weight and will be rejected only in cases of apparent error. It was under these circumstances that we sustained the

Commissioner's findings in Parker v. Motor Boat Sales, supra." 317 US 256-257.

In the *Davis* case the court did not have the benefit of findings of any agency, either federal or state. Indeed, four Washington state tribunals had rejected the claim. Nevertheless, the court, relying on the presumption in favor of constitutionality of the state statute, reversed the judgment of the Washington Supreme Court.

The radical departure from precedent in this decision is indicated when it is borne in mind that, as the Supreme Court of Washington said in its opinion (12 Wash2d 349, 121 P2d 365), Davis was working as a stevedore on a vessel in navigable waters loading cargo, and the Supreme Court of the United States had "uniformly held that the 'loading and stowing the ship's cargo' in navigable waters is a 'maritime service,' and that claims for injury incident thereto are exclusively within admiralty jurisdiction" (citing *Atlantic Transport Co. v. Imbrovek,* 234 US 52, 34 S Ct 733, 58 L ed 1208, 51 LRA (ns) 1157; *Southern Pacific Co. v. Jensen,* supra; *Nogueira v. N.Y., N.H. & H.R. Co.,* supra; *Employers' Liability Assurance Corp. v. Cook,* supra).

The scope and impact of the *Davis* decision became more apparent in the light of the decisions in two cases following it which originated in state courts. In *Moores's Case,* 323 Mass 162, 80 NE2d 478 (1948), the question was whether state compensation could validly be awarded to the claimant, who was injured while engaged in repair work on a floating dry dock, though his ordinary work was on land. Previously the Supreme Judicial Court of Massachusetts had held in *O'Hara's Case,* 248 Mass 31, 142 NE 844, in accordance with firmly established law, that the rights and

liabilities of parties with respect to injuries received by workmen engaged in repair of a vessel lying in navigable waters (as distinguished from construction work on an uncompleted vessel) are governed by maritime law (*Baizley Iron Works v. Span,* 281 US 222, 50 S Ct 306, 74 L ed 819 (1930); 2 Larson, op cit § 89.25), and that a dry dock, designed to receive vessels floating in navigable waters is itself part of the navigable waters and subject to admiralty jurisdiction. *The Steamship Jefferson,* 215 US 130, 30 S Ct 54, 54 L ed 125; *The Robert W. Parsons,* 191 US 17, 24 S Ct 8, 48 L ed 73. But, in view of the *Davis* decision, the Massachusetts court felt bound "to include within the 'twilight zone' the case of a workman engaged in an ordinary land occupation although occasionally going upon a dry dock or vessel to make repairs," and held that the injury was compensable under the State Compensation Law. The judgment was affirmed by the Supreme Court of the United States without opinion on the authority of the *Davis* case, sub nom. *Bethelehem Steel Co. v. Moores,* 335 US 874, 69 S Ct 233, 93 L ed 417 (1948).

The other state case referred to was *Baskin v. Industrial Accident Commission,* 89 Cal App2d 632, 201 P2d 549 (1949). There the claimant's employer was engaged in repairing a vessel tied up at a wharf in San Francisco Bay. Claimant's work was almost entirely on land, but he was sent aboard the ship to perform a service in connection with the repair job and was injured. Compensation under the state law was denied, although the *Davis* case was considered by the court. Certiorari was allowed by the Supreme Court of the United States, which vacated the judgment in a per curiam decision and remanded the cause to the District Court of Appeals for reconsideration in the

light of the *Moores* and *Davis* cases. 338 US 854, 70 S Ct 99, 94 L ed 523 (1949). On remand the California court reversed its former ruling (97 Cal App2d 257, 217 P2d 733 (1950)), certiorari was again granted, and the Supreme Court, in a memorandum decision, affirmed the judgment on motion (340 US 886, 71 St Ct 208, 95 L ed 643).

Chief Justice Qua, who wrote the opinion for the court in *Moores's Case,* described the "twilight zone" as "an area of doubt within which the two acts overlap and the injured workman may recover under either of them." He found support for that view in the concurring opinion of Mr. Justice Frankfurter in the *Davis* case, who said "Theoretic illogic is inevitable so long as the employee in a situation like the present is permitted to recover either under the federal act   *   *   * or under a state statute." 217 US 259. Chief Justice Stone, who dissented in the *Davis* case because he thought that the decision was not "within judicial competence" (317 US 260), said: "Congress by the enactment of the Longshoremen's and Harbor Workers' Act has left no room for an overlapping dual system of the sort which the Court now espouses by placing its decision on a new doctrine that recovery under either the state or the federal act is to be sustained if the case is thought a close one." 317 US 261. Circuit Judge Hutcheson in *De Bardeleben Coal Corp. v. Henderson,* 142 F2d 481 (5th Cir 1944), referred to "the first come first served" rule of the *Davis* case. Professor Larson says "given a borderline case, and given a presumption of coverage, it follows that all borderline cases are resolved in favor of coverage by the first act under which application is made by the claimant." Larson, op cit 414. This diagnosis, however, seems to be at odds with two United States Court of Appeals decisions

which held that, notwithstanding a prior award of compensation by a state tribunal, an award under the federal Act should be sustained, payments theretofore made to the workmen pursuant to the state law being credited upon the award made by the Deputy Commissioner. *Newport News Shipbuilding & Dry Dock Co. v. O'Hearne,* 192 F2d 968 (4th Cir 1951) ; *Western Boat Bldg. Co. v. O'Leary,* supra.

■ We need not pursue this line of inquiry further. It is pertinent only insofar as it may throw a light on one of the questions in this case, namely, does the "twilight zone" doctrine apply where the injured workman is not seeking redress under any compensation statute but through the medium of an action at law? We think that it does not.

In enacting the Longshoremen's and Harbor Workers' Compensation Act "Congress intended to exercise to the fullest extent all the power and jurisdiction it had over the subject-matter." *Continental Casualty Co. v. Lawson,* 64 F2d 802, 805 (5th Cir 1933), quoted in *De Bardeleben Coal Corp. v. Henderson,* supra; *Travelers Ins. Co. v. McManigal,* 139 F2d 949 (4th Cir 1944). The preoccupation of Congress was with the compensation of injured workmen regardless of fault. As Chief Justice Hughes said in the Nogueira case, 281 US 136:

> "When the bill which became the Longshoremen's and Harbor Workers' Compensation Act was pending in Congress, the importance of the policy of compensation acts, and their advantages in providing for appropriate compensation in the case of injury or death of employees without regard to the fault of the employer, were distinctly recognized."

See to the same effect *Davis v. Department of Labor,* supra, 317 US 254; *Norton v. Warner Co.,* 321 US 565,

570, 64 S Ct 747, 88 L ed 931. Damage actions were not the concern of Congress save in the single instance of the failure of an employer to secure payment of compensation as required by § 905 of the Act, in which case, as previously stated, the injured workman or his legal representative, if death resulted from the injury, may elect to claim compensation or to maintain an action at law or in admiralty for damages.

In our view, the "twilight zone" was a contrivance— a "quasi-legislative decision," Judge Hutcheson called it in the *De Bardeleben* case—for discouraging jurisdictional disputes as between state and federal compensation laws and not as between the Federal Compensation Law and the right to bring an action for damages under state law. See Gilmore and Black, op cit § 6-52; 2 Larson, Workmen's Compensation Law, § 89.24. It was not recognized in *Pennsylvania Railroad Co. v. O'Rourke,* supra, which held that a railroad brakeman, injured when unloading box cars from a car float on navigable waters, could not maintain an action under the Federal Employers' Liability Act, but that his sole remedy was under the Longshoremen's and Harbor Workers' Act. See 344 US 341, footnote 8.

Of the numerous reported decisions which have followed the *Davis* case we have been referred to none where the doctrine was invoked to include a choice between an action for damages under state law and federal compensation except *Chappell v. C. D. Johnson Lumber Corp.,* 112 F Supp 625 (D Oregon 1953), where the identical issue was presented, and the court held that, whether the plaintiff was in an exclusive federal area or within the "twilight zone," since he was not covered under the Oregon Compensation Law he could not maintain a common-law action and his sole remedy was under the Longshoremen's and Harbor Workers'

Act. "The Act," the court said, "is automatic except in the limited circumstances provided for in the Act. Coverage under a State Workmen's Compensation Law is necessary to avoid automatic coverage under the Act." The judgment in this case was reversed by the United States Court of Appeals, but on another point. 216 F2d 873 (9th Cir 1954).

See, also, *Scrinko v. Reading Co.,* 117 F Supp 603, 608 (D NJ 1954).

Based on a suggestion in a scholarly law review article,[2] it is urged by counsel for the plaintiff that, since the Oregon Workmen's Compensation Act provides for an action against an employer who elects not to come under the Act in which the common-law defenses are not available to the defendant, the Act "would apply in toto." That is to say, that in a case such as this where the employer is not under the Act, the provision for an action at law would operate as a substitute for the compensation provision of the Act. We are not persuaded that such a course would accord with the intent of Congress. Nor do we find anything in the *Davis* case which supports it. Rather, we think that we should take for granted that the *Davis* opinion was intended to be limited to the kind of facts it dealt with and to the class of cases out of which emerged the "jurisdictional dilemma," which it was hoped would be dissipated and vanish in the "twilight zone." If, perhaps, a logical argument could be made for the suggestion, nevertheless, like Chief Justice Qua, we "recognize the futility of attempting to reason logically about 'illogic' " (*Moores's Case,* 323 Mass 167), and will not further attempt to illuminate so dark a subject.

---

[2] "Workmen's Compensation for Maritime Employees: Obscurity in the Twilight Zone" by Robert E. Rodes, Jr., 68 Harv L Rev 637.

■ We think this a case to which the Longshore-men's and Harbor Workers' Act clearly applies, and that compensation under it is the plaintiff's sole remedy for his injury. He will not have lost this right through delay because, under § 913 (a), (d), the one year's time allowed for filing a claim will not begin to run until the termination of this action.

In *Newport News Shipbuilding & Dry Dock Co. v. O'Hearne,* supra, where the court sustained an award under the federal Act for an injury to a welder engaged in the repair of a graving dry dock, Circuit Judge Soper, writing the opinion for the court, said with reference to the decision of that court in *Travelers Ins. Co. v. McManigal,* 139 F2d 949 (4th Cir 1944):

"* * * In that case we reviewed the decisions in border line cases of a maritime nature and endeavored to show the tendency of the courts, acting in the interest of humanity prior to the passage of the Longshoremen's Act, to enlarge the jurisdiction of state compensation commissions by developing the 'local concern' doctrine so as to enable state commissions to make awards to injured men, and the opposite tendency, since the passage of the federal statutes, to adhere more strictly to the traditional principle that admiralty jurisdiction depends upon the location of the activities involved upon navigable waters * * *."

■■ Among the cases exemplifying the more recent tendency we call particular attention to *Radcliff Gravel Co. v. Henderson,* 138 F2d 549 (5th Cir 1943). The employer in that case was engaged in the same business as the defendant here, namely, the dredging of sand and gravel from the bed of a navigable lake. The case involved the death by drowning of two employees. Their job was trimming the sand and gravel as it was

loaded onto barges to keep it from "forming a pyramid or being cone-shaped." The contract of employment provided that the employer was to furnish transportation to and from the shore and dredge boat. Several employees were drowned when a small boat, propelled by an outboard motor, in which they were being transported by their employer, capsized. Awards under the federal Act to the dependents of two of them were sustained, and this without reference to the *Davis* case or the "twilight zone." The case here is even stronger, for, at the time of his injury, the plaintiff was engaged in loading a barge. "A barge is a vessel within the meaning of the Act even when it has no motive power of its own." *Norton v. Warner Co.,* supra, 321 US 571; *Martinson v. State Ind. Acc. Com.,* supra. The loading of a vessel has a direct relation to commerce and navigation and is not a matter of purely local concern. *Martinson v. State Ind. Acc. Com.,* supra; *Pennsylvania Railroad Co. v. O'Rourke,* supra; *Employers' Liability Assurance Corp. v. Cook,* supra; *Northern Coal & Dock Co. v. Strand,* supra. If it should be said that, notwithstanding the survival of *Jensen* (see the *O'Rourke* case, 344 US 337), decisions rendered during the "maritime but local" era are suspect, it nevertheless remains clear that under the *O'Rourke* and *Motor Boat Sales* decisions the present case comes directly under the terms of the federal Act. Section 903 provides for payment of compensation "if the disability or death results from an injury occurring upon the navigable waters of the United States," and § 902 (4) defines the employer, who is made liable for the compensation, as "an employer any of whose employees are employed in maritime employments, in whole or in part, upon the navigable waters of the United States (including any dry dock)."

The nature of the plaintiff's regular work, the fact, if it were such, that it was not maritime, is not controlling. "The statute applies," said the court in the *O'Rourke* case, "by its own terms, to accidents on navigable waters when the employer has any employees engaged in maritime service." 344 US 339. Again, "Section 902 (4) requires the employer to pay compensation if he has 'any' employees so engaged. If, then, the accident occurs on navigable waters, the Act must apply if the injured longshoreman was there in furtherance of his employer's business, irrespective of whether he himself can be labeled 'maritime.'" 344 US 341-342. The court said further, "New Jersey could not have enacted statutes granting compensation for respondent's injury on navigable waters." 344 US 337. In short (absent, at least, a choice between the federal and a state compensation law), the federal Act adopts the familiar rule that in tort cases the admiralty jurisdiction depends upon the locality of the injury. *The Admiral Peoples,* 295 US 649, 55 S Ct 885, 79 L ed 1633 (1935); *O'Hara's Case,* 248 Mass 31, 142 NE 844 (1924); *Ford v. Parker,* 52 F Sup 98 (D Md 1943). Cf. *State Industrial Commission v. Nordenholt,* 259 US 263, 42 S Ct 473, 66 L ed 933, 25 ALR 1013 (1922).

The following cases tend to support the conclusion at which we have arrived: *Avondale Marine Ways v. Henderson,* 346 US 366, 74 S Ct 100, 98 L ed 77 (1953); *Green v. Simpson & Brown Construction Co.,* 14 NJ 66, 101 A2d 10 (1953); *Standard Dredging Corporation v. Henderson,* 150 F2d 78 (5th Cir 1945); *De Bardeleben Coal Corp. v. Henderson,* supra; *Ford v. Parker,* supra; *Travelers Ins. Co. v. McManigal,* supra.

We think that the judgment below was right and it is affirmed.