Argued February 7, 1974, reversed with instructions January 23,
motion to stay mandate allowed February 19, 1975, application
made for certiorari to U. S. Supreme Court

FEYEN, *Respondent, v.* AMERICAN MAIL
LINE, LTD., *Appellant.*

530 P2d 830

*William F. White,* Portland, argued the cause for appellant. With him on the briefs were White, Sutherland, Parks & Heath, Portland.

*Raymond J. Conboy,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson & Atchison and Garry Kahn, Portland.

DENECKE, J.

The plaintiff was a mate on the vessel "Korean Mail" operated by the defendant. The plaintiff suffered an injury while working on the ship and filed this action. The trial court, sitting without a jury, found for the plaintiff. The defendant appeals.

The plaintiff was injured when a hatch cover closed on his hand. The hatch covers on the ship operate hydraulically. When they are fully opened they are automatically locked and cannot be closed. To close the hatch covers the locks first must be manually re-

leased. After the locks are released several controls located in a control panel must be operated. The control panel is located on the right side of the vessel on what is described as a mast table. The mast table is immediately to the rear of the No. 2 hatch opening and elevated about five or six feet above the hatch opening.

The ship took on cargo in Taiwan. Chinese longshoremen did the loading. They spoke no English and communicated with the ship's personnel through a stevedore foreman.

When the plaintiff came on watch, the officer whom he relieved told him that longshoremen were finishing the loading of the No. 2 hatch. Plaintiff's duties included inspection of the loading when the longshoremen were finished. If he approved the loading he would order the hatch cover closed. Normally, the plaintiff would have a longshoreman close the hatch under plaintiff's supervision.

About 8:30 p.m. the plaintiff came to the left rear side of the No. 2 hatch. It was after dark and the ship's lights were on. He saw no one on the deck or near the hatch cover controls. The plaintiff looked into the hatch and saw men working. Plaintiff rested his hand on the top of the hatch coaming or frame a few inches from the open hatch cover. Without warning the hatch cover started closing and rolled over plaintiff's hand. The plaintiff screamed and a Chinese longshoreman appeared from behind the control panel. The plaintiff gestured and the longshoreman opened the hatch.

Plaintiff charged the defendant both with breach of warranty of the ship's seaworthiness and with neg-

ligence. One specification of both charges was that the defendant failed to have the hatch covers in a locked position to prevent them from being moved while plaintiff was in the area of the hatch.

■ The trial court found that defendant did fail to have the hatch cover in a locked position. The trial court concluded that the vessel was unseaworthy in this respect.

We conclude that the only inference that can be drawn is that the hatch cover locks were unlocked in the process of closing the hatch covers. This inference is compelled because four separate operations must be made to start the closing of the hatch cover. First, the hatch cover locks on the main deck must be manually unlocked; then, one must press a button on the control panel to actuate the hydraulic system. Next, the operator must open the applicable bypass valves. Lastly, he turns the control lever to close the hatch. The only inference is that a longshoreman intentionally commenced closing the hatch cover. That anyone could inadvertently close the hatch cover would be too unlikely a coincidence to consider. And it should be noted that although the act of closing the hatch cover does involve a series of necessary but arguably separate and independent steps or acts, such independence is without relevance.

The next question is, was an unseaworthy condition created when the longshoreman unlocked the hatch covers and commenced closing the hatch.

■ This case is within admiralty and maritime jurisdiction; therefore, federal law governs. *Hahn v. Ross Island Sand & Gravel Co.,* 214 Or 1, 8-9, 320 P2d 668, cert granted 356 US 972, 78 S Ct 1137, 2 L Ed2d 1146,

revs'd 358 US 272, 79 S Ct 266, 3 L Ed2d 292 (1958), rehr den 359 US 921, 79 S Ct 577, 3 L Ed2d 583 (1959). A ship operator has a duty to furnish a seaworthy vessel; that is, "to furnish a vessel and appurtenances reasonably fit for their intended use." *Mitchell v. Trawler Racer,* 362 US 539, 550, 80 S Ct 926, 4 L Ed2d 941 (1960). A seaman injured because of the ship operator's failure to provide a seaworthy vessel has a right of recovery against the ship and its operator.

■ A temporary condition which prevents a ship from being reasonably fit for its intended use, although it arises after the commencement of the voyage, renders the ship unseaworthy in that respect. *Mitchell v. Trawler Racer,* supra (362 US 539). The Trawler Racer was a fishing vessel. Slime and fish gurry left from unloading operations remained on the ship's rail. Because of the presence of this refuse, the plaintiff slipped on the rail while disembarking the ship. A majority of the Court held that the condition of the rail could be found to render the ship unseaworthy. It held that it was immaterial whether the ship owners knew or should have known about the condition since unseaworthiness is not based upon negligence.

On the other hand, when the injury is not caused by a condition of the ship, but by "the isolated, personal negligent act of the petitioner's fellow longshoreman," the ship is not thereby rendered unseaworthy. *Usner v. Luckenbach Overseas Corp.,* 400 US 494, 500, 91 S Ct 514, rehr den 401 US 1015, 91 S Ct 1247, 28 L Ed2d 552 (1971). In *Usner* a winch operator lowered a sling too fast and the sling struck a longshoreman. The court held this did not create an unseaworthy condition.

■ The lower federal courts have had difficulty in verbalizing and applying this distinction. For example, *Kyzar v. Vale Do Ri Doce Navegacai, S. A.,* 464 F2d 285 (5th Cir 1972). We interpret the federal cases to hold that if a negligent act creates a condition which exists for a period of time or if there is a series of similar negligent acts which create an unsafe condition, and such condition causes an injury, the ship is thereby rendered unseaworthy. However, if there is but one negligent act and that causes an injury close in point of time to the negligent act, the ship is not thereby rendered unseaworthy.

We find the facts in this case to be of the latter category. The longshoreman negligently commenced to close the hatch cover since he either failed to ascertain whether it was safe to do so or failed to give a proper warning. This conduct immediately caused plaintiff injury. However, the negligence of a longshoreman without more does not establish the liability of the shipowners.

The Fifth Circuit, which has struggled more with defining *Usner* than any other circuit, reached this same conclusion when confronted with similar facts. In *Robinson v. Showa Kaiun K. K.,* 451 F2d 688 (5th Cir 1971), plaintiff was injured when a hatch cover was opened rather than closed as in the instant case. The stevedore opened the hatch cover by pushing it with a scoop bucket attached to a crane. The plaintiff longshoreman was standing on the hatch cover. The crane operator, without any warning to the plaintiff, pushed the hatch cover with the bucket and caused the plaintiff to lose his balance. The court held:

> "* * * The push of the bucket in this case was an 'isolated, personal negligent act' of the appel-

lant's fellow longshoreman. That act did not render unseaworthy an otherwise seaworthy vessel under the *Usner* doctrine, and the judgment of the trial court is affirmed."[1] 451 F2d at 690.

■ Plaintiff charged and the trial court found the ship was unseaworthy because it had no written instructions on the control box so that the operator would know how to activate the hatch covers. This failure could not be a cause of the plaintiff's injury. As we previously stated, we are of the opinion that the only inference that can be drawn is that a longshoreman intentionally commenced to close the hatch cover.

■ Plaintiff also charged that the defendant was negligent in closing the hatch cover when plaintiff had his hand on the coaming and in failing to warn plaintiff. The trial court found defendant was negligent in these respects. Plaintiff's contentions are based upon the proposition that the longshoreman who started to close the hatch cover was an employee of the ship and, therefore, the ship is liable for this negligence.

Plaintiff has not cited any cases in which a court held longshoremen were employees of the ship and the ship was liable because of the longshoremen's negligence. We have found none and the cases to which we have been referred are to the contrary. *Tim v. American President Lines, Ltd.*, 409 F2d 385 (9th Cir 1969); *Kyzar v. Vale Do Ri Doce Navegacai, S. A.*, supra (464 F2d at 289).

---

[1] There was testimony that about half of the time the longshoremen closed the hatch without the supervision of the ship's officers. If this could be construed as creating an unseaworthy condition, it cannot be considered as the plaintiff did not charge that the ship was unseaworthy because the defendant permitted the longshoremen to close the hatch covers without supervision.

*Tim v. American President Lines, Ltd.,* supra (409 F2d at 388), distinguished the case plaintiff is relying upon, *Hopson v. Texaco, Inc.,* 383 US 262, 86 S Ct 765, 15 L Ed2d 740 (1966). In the *Hopson* case, seamen became ill in a foreign port and could not continue the voyage. The master procured a cab to transport the seamen to the office of the United States Consul as was required of him by law. The taxi driver drove negligently and injured or killed his seamen passengers. The United States Supreme Court held that the ship was liable for the taxi driver's negligence. The Court emphasized that the master selected the driver and, therefore, the ship was liable for the negligence of the driver it chose. In *Tim,* as here, there was no evidence the ship selected the stevedoring contractor who employed the longshoremen; therefore, the court in *Tim* held that the ship was not responsible for the negligence of the longshoremen.

Reversed with instructions to enter judgment for the defendant.