WEAR, IMPLEADED SUB. NOM. WEAR SAND COMPANY, ET AL. *v.* STATE OF KANSAS EX REL. BREWSTER, ATTORNEY GENERAL.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 30. Argued November 12, 1917.—Decided November 26, 1917.

A specific intent to accept the tidal test of navigability, and so to extend riparian ownership *ad filum aquæ* on non-tidal streams which are navigable in fact, is not predicable of a statute adopting the common law of England in general terms only, particularly if enacted later than the decision in *The Genessee Chief,* 12 How. 443. Hence such a statute, passed by Kansas Territory in 1859 and retained by the State, affords no basis even in purport for denying the power of the Supreme Court of Kansas to apply the test of navigability in fact, as part of the common law, in determining the ownership of a river bed as between the State and riparian owners deriving title under a federal patent issued, before statehood, in 1860.

In a mandamus proceeding to test the right of a State to levy charges on sand dredged from a stream by a riparian owner under claim of title *ad filum aquæ,* the latter has not a constitutional right to have the question of navigability determined by a jury.

Whether in such a case the state court may take judicial notice that the stream is navigable is a question of local law. So *held* where judicial notice was taken of the navigability of the Kaw River, the principal river of Kansas, at the state capital, and the decision was supported by the meandering of the stream in original public surveys, and by various state and federal statutes and decisions cited.

Assuming that the taking of sand from the bed of a navigable stream be of common right, the State may nevertheless exact a charge from those who take it.

River sand appertains to the river bed when at rest; its tendency to migrate does not subject it to acquisition by mere occupancy.

92 Kansas, 169, affirmed.

THE case is stated in the opinion.

*Mr. Francis C. Downey,* with whom *Mr. Armwell L. Cooper* and *Mr. Denis J. Downey* were on the brief, for plaintiffs in error.

*Mr. J. L. Hunt,* Assistant Attorney General of the State of Kansas, with whom *Mr. S. M. Brewster,* Attorney General of the State of Kansas, and *Mr. J. P. Coleman* and *Mr. S. N. Hawkes,* Assistant Attorneys General of the State of Kansas, were on the brief, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a petition for mandamus to require the Treasurer of the State to transfer certain funds from a special account to the general revenue funds of the State, so that they can be used for paying the expenses of government. The money in question was collected under the State Laws of 1913, c. 259, requiring payment of ten per cent. of the market value on the river bank of sand taken by private persons or corporations from the bed of streams subject to the control of the State. It was paid by the plaintiffs in error for sand taken from the Kansas River at Topeka, and it was kept as a separate fund because the plaintiffs in error paid it under duress and protest and claimed the right to recover it before it should lose its identity by the transfer demanded. Under the state procedure the plaintiffs in error were made parties and came in and set up title to the fund. The Supreme Court of the State over-

ruled the claim and directed the issue of the peremptory writ.

This case was decided on a motion to quash the answers; the allegations of which, so far as now material, may be summed up as follows. In 1859 the Territorial Legislature of Kansas enacted that the Territory should be governed by the common law of England, which still remains the law of the State. On October 1, 1860, the United States conveyed land adjoining the Kansas River to the predecessor in title of the plaintiffs in error, and, as the tides do not ebb and flow in the river, they allege that the conveyance carried title to the middle of the stream; that they were the owners of the sand dredged from the same; that to enforce the provisions of the Act of 1913 against them would infringe the Fourteenth Amendment, and that they paid the sums exacted under protest and duress, the circumstances of which are detailed. The river was meandered on both sides by the surveys of the United States up to above this land, and with the Missouri and Mississippi constitutes an open and unobstructed water way from the up stream end of the meander lines to the Gulf of Mexico and the high seas. But the plaintiff in error Fowler, while adopting this allegation, alleges that it is not and never has been a navigable stream, and in 1864 the Kansas Legislature made a declaration to that effect. There follow allegations that the sand is migratory, and, in short, of the nature of animals *feræ naturæ*, and that ever since the admission of the State the persons within it have taken the sand as of common right. The presence of the sand is alleged to interfere with the use of the stream for its proper purpose of navigation as a valuable commercial highway, the river being alleged to be a public highway the use of which, including the right to take sand, belongs to the people in the State. It also is suggested that if the court should entertain jurisdiction and determine the questions of fact arising in the proceeding the

plaintiffs in error would be deprived of the equal protection of the laws contrary to the Constitution of the United States.

The argument of the plaintiffs in error does not need a lengthy response or a statement of all the answers that might be made to it. It was said that the territorial statute gave to the patent of the United States the effect of a grant *ad filum aquæ.* But this attributes too detailed and precise an effect to a general provision of law. We should be slow to believe that a State beginning its organized life with an express adoption of the common law of England stood any differently from one where the common law was assumed to prevail because the citizens were of English descent. Therefore when the Supreme Court of Kansas regards the principle of the common law to be that the fact of navigability, not the specific test of navigability convenient for England, is what excludes riparian ownership of river beds, it is impossible for us to say that the territorial statute even purports to give greater rights. *The Genessee Chief,* 12 How. 443, had been decided before the Territorial Act of 1859 was passed, and as was observed by Mr. Justice Bradley in *Barney v. Keokuk,* 94 U. S. 324, after that decision there seemed to be no sound reason for adhering to the old rule as the proprietorship of the beds and shores of waters held navigable by that case. See further *Shively v. Bowlby,* 152 U. S. 1, 58. *Kansas v. Colorado,* 206 U. S. 46, 93, 94. *Donnelly v. United States,* 228 U. S. 243, 261. We think it too plain for extended argument that the Territorial Act created no constitutional obstacle to the present decision of the Kansas court.

Then it was said, if navigability in fact is the test, the plaintiffs in error were entitled to go to a jury on that fact, as it was in 1860, the date of the original grant, and the Supreme Court of the State was not entitled to take judicial notice that the river was navigable at Topeka.

But there is no constitutional right to trial by jury in such a case, and if a state court takes upon itself to know without evidence whether the principal river of the State is navigable at the capital of the State we certainly cannot pronounce it error. In this aspect it is a question of state law. *Donnelly* v. *United States*, 228 U. S. 243, 262. See *Archer* v. *Greenville Sand & Gravel Co.*, 233 U. S. 60, 68, 69. The fact is of a kind that should be established once for all, not perpetually retried. The court had too, in favor of its decision, the circumstance that the stream was meandered in the original surveys; the decisions of its predecessors; *Wood* v. *Fowler*, 26 Kansas, 682; *Topeka Water Supply Co.* v. *Potwin*, 43 Kansas, 404, 413; *Johnston* v. *Bowersock*, 62 Kansas, 148; *Kaw Valley Drainage District* v. *Missouri Pacific Ry. Co.*, 99 Kansas, 188, 202; *Kaw Valley Drainage District* v. *Kansas City Southern Ry. Co.*, 87 Kansas, 272, 275, s. c., 233 U. S. 75; legislation of the State; Private Laws of 1858, c. 30, § 4, c. 31, § 4, c. 34; 1860, c. 20, § 3, etc.; and of the United States; Act of May 17, 1886, c. 348, 24 Stat. 57; Act of January 22, 1894, c. 15, 28 Stat. 27; Act of July 1, 1898, c. 546, 30 Stat. 597, 633, etc.; and the assent, so far as it goes, of this court; *Kansas City Southern Ry. Co.* v. *Kaw Valley Drainage District*, 233 U. S. 75, 77, not to speak of the allegations in the answers of the Wear Sand Company, adopted, notwithstanding his denial of navigability, by Fowler, the other plaintiff in error before this court.

The allegation that the sand is migratory and belongs to whoever may reduce it to possession, and the allegation of the public right, are inconsistent, of course, with the claim of title and hardly consistent with the allegation that it is got by dredging. But the fact that it is liable to be shifted does not change its character while at rest upon the river bed, and if there were the public right alleged, it would not hinder the State from collecting, for the good of the whole public, a charge from those individuals who withdraw it

from public access. We see nothing in the case of the plaintiffs in error that requires further answers that might be made, or discussion at greater length.

*Judgment affirmed.*