Argued April 23, modified June 15, 1920, rehearing denied February
15, 1921.

## LOGAN v. SPAULDING LOGGING CO.

(190 Pac. 349.)

Navigable Waters—"Navigable Stream"—Logs and Logging.

1. A stream which at certain periods of the year it is practicable to use in its natural state for the purpose of floating timber products is a navigable stream for such purpose.

Eminent Domain—"Taking of Property"—Riparian Proprietor.

2. Interference by logging company with natural flow of a stream, in so far as it injures a riparian proprietor, or interferes with his right to the use of a stream, is a "taking" *pro tanto* of his property, governed by Article XI, Section 4 of the Constitution, prohibiting such taking without compensation first made or secured.

Navigable Waters—Splash-dams—Riparian Owners.

3. In so far as the use of splash-dams does not work injury to the rights of riparian owners, their use is proper.

From Polk: Harry H. Belt, Judge.

In Banc.

This is a suit to declare null and void an order of the Public Service Commission granting to the defendant, The Charles K. Spaulding Logging Company, a franchise for the improvement and use of the Luckiamute River for floating logs and other forest products thereon, and to restrain the defendant logging company from increasing or decreasing the natural flow of the water in the river, or in any manner interfering with plaintiff's property or

2. Liability of one using stream to float timber for resulting injuries to riparian proprietor, see notes in 10 Ann. Cas. 235; Ann. Cas. 1918A, 732; 40 Am. St. Rep. 438; 82 Am. St. Rep. 265; 90 Am. St. Rep. 819, 829; 103 Am. St. Rep. 525.

On relative rights and duties between those maintaining dam in floatable stream and those using stream for floating logs and timber therein, see note in 22 L. R. A. (N. S.) 545.

On right of riparian owner for compensation for damages to his property, by construction, under legislative authority, of dams or booms for floating or storing logs, see note in 22 L. R. A. (N. S.) 641.

water rights.   A demurrer to the complaint was filed
by the Public Service Commission, which being sus-
tained by the trial court, the suit proceeded as be-
tween plaintiff and the defendant logging company,
which will hereafter be referred to in the opinion as
the defendant.   A trial was had, resulting in a de-
cree enjoining the defendant "from increasing, de-
creasing, altering, changing, or otherwise interfering
with the natural flow of the Luckiamute River above
the mill-dam of the plaintiff, J. P. Logan."   The
facts, so far as essential to the discussion, are stated
in the opinion.        MODIFIED.   REHEARING DENIED.

For appellant there was a brief over the name of
*Messrs. Winter & Maguire,* with an oral argument
by *Mr. J. P. Winter.*

For respondent there was a brief over the name
of *Messrs. McFadden & Clarke,* with an oral argu-
ment by *Mr. Arthur Clarke.*

BENSON, J.—For fifty years the plaintiff and his
predecessors in interest have been the owners of a
tract of land through which the Luckiamute River
flows, and upon which, during all of that time, there
has been maintained and operated a grist-mill, for
which the power is obtained by a dam across the
river, using the waters of the stream, by means of
turbine wheels, to drive the machinery of the mill.
For twenty years past the stream has been used also
by the defendant and others for floating logs and
other forest products.   In this connection the de-
fendant maintains two dams across the river, one be-
ing about twelve miles above the grist-mill and the
other about sixteen miles above the same.   The up-
per one of these dams has not been used by the

defendant for about ten years. The lower one, which is about thirty feet high, is used for the purpose of accumulating water for the storage of logs and for sluicing logs down the river. It has two sluice-gates, each about sixteen feet wide and fourteen feet deep. The supply of water accumulated by this dam is sufficient for the storage of about ten million feet of logs. During the summer and fall the storage pond is filled with water and the logs deposited therein. During the winter the sluice-gates are raised, thereby releasing the stored logs and, with them, the additional water, thereby raising the water in the bed of the stream about six feet, which accomplishes the desired floating of the logs. After the gates are thus opened, it requires about four hours for the increased flow and its burden of logs to reach the mill-dam, and about the same length of time to pass the mill. During this passage the increased volume of water in the stream "drowns" the water-wheels, and the plaintiff's mill is compelled to suspend operation until the drive is concluded. During the periods when the storage pond at the dam is filling the supply of water is cut off from the grist-mill for several hours at a time, at which times the milling operations must be suspended. In 1905 the plaintiff began suit to enjoin the defendant's sluicing operations, but before a trial was had the parties entered into a contract whereby the defendant paid to plaintiff certain sums as compensation for past damage, and agreed to make stipulated payments in the future. This agreement was to be in force for five years, and expired on December 20, 1912, but was extended by parol agreement for two years longer. Thereafter the plaintiff declined to negotiate further, and insisted that sluicing should cease.

In 1917, the legislature passed the act set out in General Laws of Oregon for 1917, at Chapter 128 thereof, and shortly thereafter the defendant made application thereunder to the Public Service Commission, for a franchise "to raft, drive, float, boom, sort and hold logs, lumber, or other timber products in the Luckiamute River in Polk and Benton Counties within the State of Oregon." Thereafter, on March 29, 1918, the Public Service Commission made an order granting the franchise and formulated rules and regulations for defendant's conduct thereunder, whereby, *inter alia,* the defendant is limited to "not more than three floods or splashes daily, at stated times, to be fixed and determined by the applicant," etc. The use of splash-dams is also limited to the period between the first day of November and the first day of May of each year. Thereupon plaintiff commenced this suit. It is plaintiff's contention that the Act of 1917, Chapter 128, is in violation of Section 4 of Article XI of the Constitution of Oregon, which reads as follows:

"No person's property shall be taken by any corporation, under authority of law, without compensation being first made or secured in such manner as may be prescribed by law."

Plaintiff's attack upon the validity of the statute is directed to the provisions therein which permit the use of splash-dams and the entrance of loggers upon riparian lands for the purposes of reclaiming stranded logs, etc., without providing for the prior assessment and tender of compensation to the owner therefor.

The defendant concedes, of course, that neither the state nor the defendant as its agent, has the right to take private property, even for a public use, without

compensation being first made or secured, but it very earnestly maintains that increasing or decreasing the natural flow of the water in the stream, and going upon the riparian owner's private lands for reclaiming stranded logs, or aiding with their peaveys the passage of the logs in the stream, do not constitute a taking of property.

1. There is no question but that the Luckiamute River is a navigable stream for the purpose of floating timber products, not by virtue of the declaration of that fact in the act of 1917, but by reason of the fact that at certain periods of each year it is practicable to use it, in its natural stage, for such purposes: 1 Farnham, Waters, § 24; *Kamm v. Normand,* 50 Or. 9 (91 Pac. 448, 126 Am. St. Rep. 698, 11 A. L. R. (N. S.) 290). In the case last cited Mr. Chief Justice BEAN discusses nearly every question which might conceivably arise in a controversy like the one at bar. In discussing the elements which are requisite to establish the navigability of a stream for floating logs, he uses this language:

"But a stream which is not such a highway cannot be made one by the use of dams or other artificial means, without first acquiring the rights of riparian proprietors: 1 Farnham, Waters, § 139. Nor can a stream, navigable in its natural condition at certain stages of the water, be made so at other times by artificial means, such as flooding and the like. No one has a right to store water, and then suddenly release the accumulation, and thus increase the natural volume of the stream, and overflow, injure or wash the adjoining banks, or otherwise interfere with the rights of riparian owners. The riparian proprietor is entitled to the enjoyment of the natural flow of the stream with no burden or hindrance imposed by artificial means. (Citing a number of cases.)

"Dams, dikes, embankments and the like may be constructed in or along floatable streams to facilitate their

use (*Union Power Co.* v. *Lichty*, 42 Or. 563 (71 Pac. 1044), but not to the extent of injuring the riparian proprietors by retarding the flow of the water or sending it down in increased volumes to his injury or at times when the stream would not otherwise be navigable. And this rule is not changed by the fact that a stream cannot be successfully used for logging purposes without such artificial aids to navigation on the ground of necessity."

2. It will be observed that the doctrine thus announced clearly asserts that interference with the natural flow of the stream, in so far as it injures the riparian proprietor, or interferes with his enjoyment of his right to the use of the stream, is a taking *pro tanto* of his property, which is governed by the constitutional provision above quoted. This statement of the law has been reaffirmed by this court in *Trullinger* v. *Howe*, 33 Or. 219 (97 Pac. 548, 99 Pac. 880, 22 L. R. A. (N. S.) 545), and *Flinn* v. *Vaughn*, 55 Or. 372 (106 Pac. 642), and must be taken as the settled law in this state, regardless of what may have been the holding in some other jurisdiction.

3. It should be observed, however, that the prior holdings of this court expressly limit the inhibition upon the use of splash-dams to such a use as works an injury to the rights of the riparian owner, and this limitation we think is a proper and just one. The decree of the lower court is an absolute restraint upon any increase or decrease of the natural flow of the stream, and it should be modified so as to enjoin any such increase or diminution of the natural flow of the stream to the injury of the plaintiff, and a decree will be entered here to that effect; neither party to recover costs in this court.

Modified.    Decree Entered.    Rehearing Denied.

Burnett and Harris, JJ., not sitting.