AMERICAN RED CROSS *et al. v.* HINSON.

(*Nashville,* December Term, 1938.)

Opinion filed Dec. 17, 1938.

E. W. Braden and T. A. McEachern, Jr., both of Memphis, for appellants.

J. A. Osoinach, of Memphis, for appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

This is a proceedings under the Tennessee Workmen's Compensation Law (Code section 6851 et seq.), by the widow of an employee of American Red Cross seeking an award against that organization and its insurer on account of the death of her husband. There was a judgment for the petitioner below, from which the defendants have appealed in error.

■ There is no question but that the deceased met with an accidental death arising out of and in the course of his employment. He was employed by the Memphis office of American Red Cross as a rescue worker during the 1937 flood. He was drowned. Just previous to his death deceased, with others, was ordered from the Mississippi side of the Mississippi River to proceed over to the Arkansas side about matters connected with his employment. They crossed the river in a boat known as a John-boat, the boat being propelled by an outboard motor. After reaching the Arkansas side, the boat became entangled in some driftwood and, in an effort to get the boat out, it was overturned and petitioner's husband was drowned.

It is not necessary to go into the nature of the duties of deceased and to determine whether, as a matter of fact, he was a maritime employee. Assuming this to be the fact, the defendants insist that the accident in which deceased met his death occurred on navigable waters of the United States and that this suit is therefore not maintainable under the Tennessee compensation statute. That any recovery by the petitioner must be had under the Federal Longshoremen and Harbor Workers' Compensation Act, 33 U. S. C. A., sec. 901 et seq., or under the Jones Act, 46 U. S. C. A., sec. 688.

Defendants' contention is correct, conceding deceased

to have been a maritime employee, if he met his death on navigable waters. *Nogueira* v. *New York, N. H. & H. R. Co.,* 281 U. S., 128, 50 S. Ct., 303, 74 L. Ed., 754; *Employers' Liability Assur. Corp.* v. *Cook,* 281 U. S., 233, 50 Ct., 308, 74 L. Ed., 823; *Minnie* v. *Port Huron Terminal Co.,* 295 U. S., 647, 55 S. Ct., 884, 79 L. Ed., 1631; *Southern P. Co.* v. *Jensen,* 244 U. S., 205, 37 S. Ct., 524, 61 L. Ed., 1086, L. R. A., 1918C, 451, Ann. Cas., 1917E, 900; *Grant-Smith-Porter Ship Co.* v. *Rohde,* 257 U. S., 469, 42 S. Ct., 157, 66 L. Ed., 321, 25 A. L. R., 1008. It would be otherwise if the injury took place on land. *Nogueira* v. *New York, N. H. & H. R. Co., supra; Minnie* v. *Port Huron Terminal Co., supra; State Industrial Commission* v. *Nordenholt Corp.,* 259 U. S., 263, 42 S. Ct., 473, 66 L. Ed., 933, 25 A. L. R., 1013.

█ The trial judge was of opinion that the accident occurred on "overflowed lands," not on navigable waters, and that petitioner was entitled to an award under the State law. We think the trial judge was right.

The point where this accident occurred was within the levee on the Arkansas side but some distance from the bank of the river. Petitioner's witness Stigler said that this accident occurred at a point ordinarily dry land, not covered with water except in flood times, that there were trees growing at this place. The witness West testified that the point of the accident was about 300 yards from the bank of the river and from the landing on the river known as Peters Landing. He likewise testified as to the trees. The witness Mitchim testified to the same effect as the other two, that the point of the accident was 200 or 300 yards from the bank of the river and the landing, and that there were trees at the point of the accident. Defendants' witness, Captain Wycoff,

an engineer officer, testifying from a map of the locality, said that the point of the accident was 200 or 300 feet from the bank of the river and the landing. He made this estimate from a scale shown on a map and said that he had not been to the locality for a number of years.

■ There was no proof that the river reached the point of this accident with any periodicity or regularity. Petitioner's proof was to the effect that the river got so high only in flood times. We think, therefore, that the evidence abundantly justified the finding of the circuit judge that deceased met his death on overflowed land rather than upon navigable waters.

Defendants stress the fact that the water at the point of the accident at this particular time was quite deep and capable of floating a large craft. This circumstance, however, we regard as immaterial if such a depth of water did not prevail at this point at least at regular or periodical intervals.

■ In *Sigler* v. *State*, 66 Tenn. (7 Baxt.), 493, this court approved the following test of navigability:

"The test is, whether there is in the stream capacity for use for the purpose of transportation valuable to the public; and in this view it is not necessary that the stream should have a capacity for floatage at all seasons of the year, nor that it should be available for use against the current as well as with it. If, in its natural state and with its ordinary volume of water, either constantly or at regular recurring seasons, it has such capacity that it is valuable to the public, it is sufficient."

The foregoing was quoted and approved in *Miller* v. *State*, 124 Tenn., 293, 137 S. W., 760, 35 L. R. A. (N. S.), 407, Ann Cas., 1912D, 1086.

In *Sigler* v. *State, Miller* v. *State,* and in *Southern*

*Railroad Co.* v. *Ferguson,* 105 Tenn., 552, 59 S. W., 343, 80 Am. St. Rep.; 908, it appeared that regularly every year there was sufficient water in the streams under consideration for a time to make them adaptable for commerce during that season.

It is true that to constitute a navigable stream it need not be perennially navigable. If navigable at certain seasons, however, the general rule is that "the seasons of navigability must occur regularly and be of sufficient duration to serve a useful public purpose for commercial intercourse." 45 C. J., 412, and cases cited.

The decisions of the Supreme Court of the United States and of the inferior Federal Courts seem to be to like effect. *Leovy* v. *United States,* 177 U. S., 621, 20 S. Ct., 797, 44 L. Ed., 914; *Toledo Liberal Shooting Co.* v. *Erie Shooting Club,* 6 Cir., 90 F. 680; The Arkansas, D. C., 17 F., 383.

There is some controversy as to the amount of the award, but we think there was evidence before the trial judge to justify the figures fixed by him.

The judgment below is affirmed.