SHERMAN M. FAIRCHILD, Appellant, v. ALAN G. KRAEMER, Respondent.

Second Department, July 20, 1960.

*Jacquelin A. Swords, George M. Vetter, Jr.,* and *H. Paul Burak* for appellant.

*Alan G. Kraemer,* respondent in person.

BRENNAN, J. In this action for an injunction and for the recovery of damages, plaintiff seeks to restrain defendant from continuous trespasses in that, without plaintiff's permission and consent and despite plaintiff's objection thereto, defendant has navigated his boat into, and has anchored it in, the northerly portion of a certain boat basin located in the northwest section of Lloyd Neck, Suffolk County. Defendant counterclaimed for the recovery of damages based upon an assault alleged to have been committed upon him by plaintiff's employee acting in the course of his duties and in accordance with plaintiff's authorization and instructions. After trial at the Special Term, judgment was rendered dismissing, on the merits, both the complaint and the counterclaim. Plaintiff appeals from that part of the judgment which dismissed the complaint on the merits. No appeal

has been taken from that part of the judgment which dismissed the counterclaim.

Lloyd Neck, a large cape extending from the north shore of Long Island into Long Island Sound, is bounded on the east by Huntington Bay, on the west by Oyster Bay and on the north by Long Island Sound. In the northwest corner of the cape there is a boat basin, known as Lloyd Point Basin. It is an egg-shaped body of water, bounded on the east by marshlands and uplands and on the west partly by a jetty of sand and beach extending south from the northerly point of Lloyd Neck, and partly by a breakwater extending north from the westerly coast-line of Lloyd Neck. The jetty and breakwater do not meet, but are separated by approximately 500 feet of water in and through which lies the entrance into Lloyd Point Basin. The basin is about seven tenths of a nautical mile long and about three tenths of a nautical mile at its greatest width. At mean low water the basin is 18 feet deep in the center and 9 feet deep at the northerly and southerly ends. The entrance from Long Island Sound is 12 feet deep at mean low water. To maintain this entrance, dredging in the Spring of each year has been, and still is, necessary.

It is undisputed that the instant litigation is concerned only with the portion of the basin which is north of the entrance. Plaintiff established that he was the owner of one part, and the lessee of the remainder, of such northerly portion. The premises originally consisted of sand dunes with a series of gravel and sand beach ridges overgrown with cedar trees. It is clear that this basin was artificially created by a series of dredgings which commenced in or about 1893. The proof also established that prior to the dredgings a network of creeks existed in and to the east of the subject area and that one of the creeks, following one of several changed courses, traversed the area to, and opened on, Long Island Sound. As the result of the creation of the basin by the dredgings, three or four of the creeks (embraced in the network of creeks located in the marshlands adjoining the subject area to the east) then flowed and still flow into the basin. The boundaries of the basin were and are clearly and firmly established, and the separation between the sound and the basin was and is clearly marked and retained by the original shore line or beach front which now consists of and is embraced in the long beach jetty that comes down from Lloyd Point and extends south to the entrance of the basin.

The main questions involved on this appeal are whether defendant, as a member of the public, had and has the right to navigate and anchor in the basin under all of the facts and

circumstances presented in the record before us and whether, under the proof and the law applicable thereto, the complaint was properly dismissed on the merits at the Special Term.

In our view the creation of that portion of the basin, owned and leased by plaintiff, did not result in the expansion of the main body of navigable water known as Long Island Sound, for such portion of the basin is clearly marked off and separated from the sound by the aforesaid sand jetty which, as above stated, extends south along the original shore line from the northerly tip of Lloyd Neck to the entrance of the entire basin. We agree with the holding of the learned Special Term that defendant's right to navigate and anchor his boat in the basin depends upon whether, prior to the aforesaid dredgings, the creek which traversed the area was navigable in fact, for in such event the artificial boat basin could be viewed as an expansion of the navigable waters of the creek, and the right of the public to use said waters would correspondingly increase and spread to the expanded waters (*Mendota Club* v. *Anderson,* 101 Wis. 479). However, in determining whether the creek was navigable in fact, the circumstance that the tide ebbed and flowed therein is not, under the modern and majority rule which prevails in this country and in this State, controlling. Under said rule, a waterway is navigable in fact only when it is used, or susceptible of being used, in its natural and ordinary condition, as a highway for commerce over which trade and travel are or may be conducted in the customary modes of trade and travel on water (*The Daniel Ball,* 77 U. S. 557, 563; *Harrison* v. *Fite,* 148 Fed. 781, 783; *Van Cortlandt* v. *New York Cent. R. R. Co.,* 139 Misc. 892, revd. 238 App. Div. 132, revd. 265 N. Y. 249; 56 Am. Jur., Waters, §§ 178, 179, pp. 642, 645; cf. Navigation Law, § 2, subd. 5). Under the correct test of navigability, the paramount factor to be considered is not the actual use to which a stream has been put, or the purpose of its use that is important, but rather its capacity for use and its susceptibility for use (in its original state or condition) for trade, commerce or travel. The fact that a stream has been used for pleasure boating may be considered on the subject of the stream's capacity and the use of which it is susceptible. However, there is no proof in the record before us which establishes that prior to the dredgings abovementioned, the creek had been used for any boating, either for pleasure or for commerce.

It has also been held that, in determining whether a waterway is navigable in fact, consideration may be given to the existence or absence of termini at and from which the public may enter and leave said waterway (*Manigault* v. *Ward & Co.,* 123 F. 707;

*Mintzer* v. *North Amer. Dredging Co.,* 242 F. 553, affd. 245 F. 297; *Chisholm* v. *Caines,* 67 F. 285). Aside from the fact that the waters of the afore-mentioned creek were tidal in nature, the record herein does not establish that the creek was navigable in fact. Since, as stated, defendant's right to use the basin depends upon whether the creek was navigable (prior to the dredgings) it is essential that proof be submitted on this issue and that the trial court make a determination thereon. It is also our view that if the proof does not establish that the creek was navigable in fact and that the basin constitutes an expansion of the navigable waters of the creek, then the basin, having been artificially created out of the private lands of plaintiff and his predecessors in title, and having been made navigable by artificial means, would remain private property, and the waters thereof would not be subject to any public right or easement thereon (*De Camp* v. *Thomson,* 16 App. Div. 528; *Clement* v. *Watson,* 63 Fla. 109; 56 Am. Jur., Waters, § 211, p. 673).

The parties should be afforded the opportunity of adducing such proof as they may be advised with respect to the above issue of the navigability of the creek which traversed the subject area prior to the dredgings and also with respect to any other issues raised by the pleadings herein. In addition, the Lloyd Point Corporation (to whom plaintiff conveyed his premises and assigned his lease subsequent to the commencement of this action) should be brought in and joined as a party plaintiff herein.

The remaining contentions advanced by the respective parties hereto have been considered, but upon the record presented we find them to be without merit.

The judgment insofar as appealed from should be reversed and a new trial should be granted, with costs to abide the event.

NOLAN, P. J., BELDOCK and UGHETTA, JJ., concur; CHRIST, J., concurs in result.

Judgment insofar as appealed from reversed and a new trial granted, with costs to abide the event.