[Civ. No. 35733. First Dist., Div. Four. Feb. 23, 1976.]

WILLIAM HITCHINGS et al.,
Plaintiffs, Cross-defendants and Appellants, v.
DEL RIO WOODS RECREATION AND PARK DISTRICT et al.,
Defendants, Cross-complainants and Respondents.

**COUNSEL**

Lillick, McHose & Charles, R. Frederic Fisher and Barbara H. Buggert for Plaintiffs, Cross-defendants and Appellants.

Evelle J. Younger, Attorney General, Jay L. Shavelson, Assistant Attorney General, John Briscoe, Deputy Attorney General, Geary, Geary, Shea & Pawson and Michael F. O'Donnell as Amici Curiae on behalf of Plaintiffs, Cross-defendants and Appellants.

Passalacqua & Mazzoni and Francis M. Passalacqua for Defendants, Cross-complainants and Respondents.

## OPINION

**CALDECOTT, P. J.**—The question presented by this appeal is whether an 11-mile portion of the Russian River is a navigable stream and thus open to the public for boating and recreational activities. We conclude that it is.

Plaintiffs-appellants are persons with varied interests who have joined in this action to protect their right to free and unobstructed navigation on this part of the river. Defendants-respondents are Del Rio Woods Recreation and Park District (the District), a public entity formed pursuant to Public Resources Code section 5780 et seq., and Del Rio Homeowners Association (homeowners), a nonprofit corporation consisting of property owners within the boundaries of the District. The District owns two properties involved in this dispute, Del Rio Beach and a parking lot. The parking lot is located between the river and a public road.

Appellants sought declaratory relief as to the navigability of the Russian River passing through the District and public rights of access to the properties owned by the District. The trial court declared the river section involved to be nonnavigable under theories of navigability, implied dedication, prescription, or custom. The court held that appellants have no right to navigate boats on the river. The judgment further declared that appellants, as members of the public, do have rights to use District property "for boating, portage, access to or egress from the River, boat landing, launching and car parking, based on the public ownership and park status of such property, subject to the District's right

as a government entity reasonably to regulate the time, place and manner of such public uses of such property."

Three crucial findings were made by the court concerning navigability in fact of the river over the stretch in question. These were: "9. *In its natural state,* prior to installation of a U.S. Army Corps of Engineers flood control project, which stores winter flood waters and releases them in the summer and autumn, and prior to projects which artificially divert Eel River basin waters into the Russian River, so that about 10% of the total annual flow of the Russian River consists of Eel River waters, the Russian River as it passes from the Alexander Valley Bridge through the District's boundaries often had little or no water flow during the late summer and early fall months, and hence was not navigable in fact during those months. 10. The Russian River from the Alexander Valley Bridge to the downstream boundary of the District is periodically navigable in fact and is navigated at various times throughout the year by small flat-bottomed power boats, rowboats, kayaks and canoes. However, this small boat navigation would not ordinarily be possible during the late summer and early fall months in the absence of the navigational improvements referred to in the prior finding and by virtue of the damming of the stream by the District. Winter and early spring use is primarily and occasionally by fishermen. From late spring to early fall the primary boating use is for recreational boating. During winter/spring high water flow, the River has the capacity to float and during floods from time to time does float stray logs, but not on a commercial log floating basis. 11. Canoes were rented during the summer at Del Rio Beach in the late 1920's and 1930's. However, that was subsequent to the creation of Lake Pillsbury reservoir above Scott Dam in or about 1926. From this the court concludes that the River within the District's boundaries did not become navigable in fact as above described basis until after about 1926." (Italics added.)

The court thus found that, (a) in its natural condition, prior to certain improvements in the early part of this century, the river section at issue was navigable in fact except "often . . . during the late summer and early fall months"; and (b) the river section is currently navigable in fact throughout the year, though during the late summer and early fall this is only true because of the artificial improvements. On the basis of its findings, the court concluded that the river section is not "navigable in law" because in its natural condition it was often not navigable in fact during late summer and early fall months.

I

*The Finding of Nonnavigability in*
*Fact During Certain Months Prior to*
*1926 Is Supported by Substantial*
*Evidence*

█ The sole evidentiary challenge by appellants concerns the court's finding that the river was not navigable in fact during late summer and early fall prior to the installation of upstream dams, reservoirs, and diversion works in or about 1926.

As both parties and the court below correctly observed, navigability is essentially a question of fact, and must in each case be determined on the factual circumstances of the particular waterway. (*Churchill Co.* v. *Kingsbury,* 178 Cal. 554, 558 [174 P. 329]; *Bohn* v. *Albertson,* 107 Cal.App.2d 738, 742 [238 P.2d 128].) "Those rivers must be regarded as public navigable rivers in law which are navigable in fact." (*The Daniel Ball* v. *United States* 77 U.S. (10 Wall.) 557, 563 [19 L.Ed. 999, 1001]; *Bohn* v. *Albertson, supra.*) This is the American rule, and is apparently applied uniformly throughout the country. However, as will be seen below, "to call it a fact cannot obscure the diverse elements that enter into the application of the legal tests as to navigability." (*U.S.* v. *Appalachian Power Co.,* 311 U.S. 377, 405 [85 L.Ed. 243, 252, 61 S.Ct. 291].)

The finding concerning nonnavigability at certain times prior to the artificial improvements must be tested under the oft-repeated rules that the " 'reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact,' " (*Foreman & Clark Corp.* v. *Fallon,* 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]), and the power of the appellate court " 'begins and ends with a determination as to whether there is *any* substantial evidence to support' " the findings. (*Simon* v. *Simon,* 260 Cal.App.2d 626, 631 [67 Cal.Rptr. 317].)

The evidence presented was sufficient to support the finding. The statistical evidence consisted of streamflow data from December 1910 to August 1913, taken at a gauge about five miles upstream of the river section in question. These records indicated minimal or zero flow during late summer and early autumn months. Only one measurement was introduced concerning the precise area at issue, and that showed a low flow in August 1911. One expert witness testified that, but for the

artificial improvements, the river would be virtually dry from August to October in an average year. A second witness stated that United States Geological Survey records would show the river was dry at certain times prior to the improvements.

Appellant argues that because (a) the streamflow statistics do not relate to the precise section of the river in question here, and (b) the statistics cover such a short period in time, they are inadequate as a matter of law to support the finding, as there was no evidence that they represented normal natural streamflow in the area in issue. However, no contrary testimony was presented as to the time period involved. Based upon the foregoing evidence and reasonable inferences therefrom, we are unable to say that the evidence was insufficient to support the finding of the court below.

## II

*A Stream Need Not Be Navigable in*
*Fact in All Seasons or Throughout*
*the Year to Be Navigable in Law*

Appellants' primary challenge concerns the court's conclusion that the river is not "navigable in law." This attack is focused on two contentions: navigability in law does not require navigability in fact *throughout the year,* and navigability in law does not require navigability in fact in unimproved *natural* condition.

As noted earlier, navigability is primarily a factual question, and each case must therefore turn on the characteristics of the particular stream. However, the court below applied an incorrect legal test of navigability to the facts it found, and therefore, reached an incorrect legal conclusion.

The historical background of the legal definitions of navigability has been explored elsewhere and need not be repeated here. (See *The Daniel Ball* v. *United States supra,* 77 U.S. at p. 563 [19 L.Ed. at p. 1001]; *People* ex rel. *Baker* v. *Mack,* 19 Cal.App.3d 1040, 1045 [97 Cal.Rptr. 448].) Unfortunately, there has been some confusion over the years as to the applicable definition of the term, as it has different meanings dependent upon the problem under consideration. Briefly, these may be stated as follows:

Two federal definitions exist. The first, utilized for commerce clause purposes, is expressed in *U. S.* v. *Appalachian Power Co., supra:* rivers are navigable in law which are, in fact, used or susceptible of being used in their natural condition, or with reasonable improvements, for purposes of trade and commerce. (311 U.S. at pp. 406-409 [85 L.Ed. at pp. 252-254], citing *The Daniel Ball* v. *United States, supra; United States* v. *The Montello,* 87 U.S. (20 Wall.) 430 [22 L.Ed. 391]; *Rochester Gas and Electric Corp.* v. *Federal Power Com'n,* 344 F.2d 594, 595-596, cert. den., 382 U.S. 832 [15 L.Ed.2d 75, 86 S.Ct. 72].) Substantially, the same language is used in defining navigability for purposes of admiralty and maritime jurisdiction (*United States* v. *Stoeco Homes, Inc.,* 498 F.2d 597, cert. den., 420 U.S. 927 [43 L.Ed.2d 397, 95 S.Ct. 1124]; *Wreyford* v. *Arnold,* 82 N.M. 156 [477 P.2d 332, 336]), and the definition is likewise a federal question. (*United States* v. *White's Ferry Incorporated,* 382 F.Supp. 162, 165.)

The second federal definition is utilized to determine the respective rights of the states and the United States to the title of stream beds. This is a matter of federal, not local, law (*United States* v. *Oregon,* 295 U.S. 1, 14 [79 L.Ed. 1267, 1273-1274, 55 S.Ct. 610]; *United States* v. *Holt Bank,* 270 U.S. 49, 55-56 [70 L.Ed. 465, 468-469, 46 S.Ct. 197]), and a uniform federal test is mandatory upon the state and federal courts alike. (*State* v. *Bunkowski,* 88 Nev. 623 [503 P.2d 1231, 1233].) The test applied is the basic "commerce clause" test, with two exceptions: it is applied to the stream in its natural condition, and is determined as of the time of admission of the state to the United States. (*Utah* v. *United States,* 403 U.S. 9, 10-11 [29 L.Ed.2d 279, 281-282, 91 S.Ct. 1775]; *United States* v. *Holt Bank, supra; Oklahoma* v. *Texas,* 258 U.S. 574, 586 [66 L.Ed. 771, 777, 42 S.Ct. 406]; *Bohn* v. *Albertson, supra,* 107 Cal.App.2d at p. 742.)

These federal definitions are controlling when applicable to the context of the problem at hand, and the federal government retains paramount control over waters navigable under the commerce clause definition. However, in all other respects, the states are free to prescribe their own definitions of navigability, and, when not in conflict with federal dominion, "the exclusive control of waters is vested in the state, whether the waters are deemed navigable in the Federal sense or in any other sense." (*Day* v. *Armstrong* (Wyo. 1961) 362 P.2d 137, 143; *Marks* v. *Whitney,* 6 Cal.3d 251, 260 [98 Cal.Rptr. 790, 491 P.2d 374]; *Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.,* 67 Cal.2d 408, 416-417 [62 Cal.Rptr. 401, 432 P.2d 3], cert. den., 390 U.S. 949 [19 L.Ed.2d 1139, 88 S.Ct. 1037].)

Thus, for purposes of public use of waters, the state may adopt different and less stringent tests of navigability. (*Fox River Co.* v. *R. R. Comm.,* 274 U.S. 651, 655 [71 L.Ed. 1279, 1283, 47 S.Ct. 669]; *Brewer Oil Co.* v. *United States,* 260 U.S. 77, 89 [67 L.Ed. 140, 146-147, 43 S.Ct. 60]; *Wear* v. *Kansas,* 245 U.S. 154, 158 [62 L.Ed. 214, 218-219, 38 S.Ct. 55]; *Donnelly* v. *United States,* 228 U.S. 243, 262 [57 L.Ed. 820, 828, 33 S.Ct. 449]; *Southern Idaho F. & G. Ass'n.* v. *Picabo Livestock, Inc.,* 96 Idaho 360 [528 P.2d 1295, 1298]; *State* v. *Bunkowski, supra,* 503 P.2d at p. 1234; 1 Clark, Waters and Water Rights, § 37.4(A), pp. 212-213.) Even for bed title questions, where there is no conflict with a federal grant the states need not use a federal definition. (*Brewer Oil Co.* v. *United States, supra,* 260 U.S. at p. 89 [67 L.Ed. at pp. 146-147].) Moreover, navigability for purposes of a public navigational easement need not be evaluated as of the date of statehood; it may later arise. (*Bohn* v. *Albertson, supra,* 107 Cal.App.2d at pp. 742-743.)

▪ In California, if a stream is navigable under the state definition, "a public right of navigation exists and any obstruction of a navigable stream is a public nuisance. (Civ. Code, § 3479.) On the other hand, if it is not navigable, the owners of riparian properties have the right to obstruct the use of the river as they own the stream, banks and bed." (*People* ex rel. *Baker* v. *Mack, supra,* 19 Cal.App.3d at p. 1044.)

The *Mack* court adopted what is essentially a recreational boating test of navigability, noting that, "With our ever-increasing population, its ever-increasing leisure time (witness the four and five day week), and the ever-increasing need for recreational areas (witness the hundreds of camper vehicles carrying people to areas where boating, fishing, swim-. ming, and other water sports are available), it is extremely important that the public not be denied use of recreational water by applying the narrow and outmoded interpretation of 'navigability.' " (*Id.,* at p. 1045.) The court concluded that "[t]he federal test of navigation does not preclude a more liberal state test establishing a right of public passage whenever a stream is physically navigable by small craft." (*Id.,* at p. 1051; *Bohn* v. *Albertson, supra.*) Other states have similarly evolved a modern, recreational or pleasure boat test of navigability for public use or nonfederal bed title questions.[1]

---

[1](E.g., *Southern Idaho F. & G. Ass'n.* v. *Picabo Livestock, Inc., supra,* 528 P.2d 1297-1298; *Kelley* ex rel. *MacMullan* v. *Hallden,* 51 Mich.App. 176 [214 N.W.2d 856]; *Lamprey* v. *Metcalf,* 52 Minn. 181 [53 N.W. 1139, 1141, 1143]; *Fairchild* v. *Kraemer,* 11 App.Div.2d 232, 235 [204 N.Y.S.2d 823, 826]; *Roberts* v. *Taylor,* 47 N.D. 146 [181 N.W. 622, 625-626]; *Mentor Harbor Yachting Club* v. *Mentor Lagoons, Inc.,* 170 Ohio St. 193 [10 Ohio Ops.2d 131, 163 N.E.2d 373, 377]; *Coleman* v. *Schaeffer,* 163 Ohio St. 202, 205

No previous California case has considered the two specific matters raised herein: whether a stream must be navigable in fact, under the state definition, throughout the year; and whether navigability in fact is to be tested only by the natural condition of the stream. In resolving these issues, the state policy of unimpeded public use of navigable waters, expressed in our Constitution[2] and statutes,[3] must be considered.

Cases from other jurisdictions, while not controlling, are helpful in deciding the import of seasonal nonnavigability in fact. The federal tests described above all appear to apply the principle enunciated in *Economy Light Co.* v. *United States*: "nor need the navigation be open at all seasons of the year, nor at all stages of the water." (256 U.S. 113, 122 [65 L.Ed. 847, 854, 41 S.Ct. 409]; *State of Utah* v. *United States,* 304 F.2d 23, 25, cert. den., 371 U.S. 826 [9 L.Ed.2d 65, 83 S.Ct. 47]; *Clark* v. *Pigeon River Improvement Slide & Boom Co.,* 52 F.2d 550, 553; *United States* v. *Crow, Pope & Land Enterprises, Inc.,* 340 F.Supp. 25, 32-33.) Numerous state courts, in varying contexts and whether utilizing a recreational test or a stricter commercial standard of navigability, have similarly stated that navigability in law is not dependent on navigability in fact at all times or all seasons, nor on continuity of use or capacity for use.[4] Writers

[56 Ohio Ops. 214, 126 N.E.2d 444, 446]; *Luscher* v. *Reynolds,* 153 Ore. 625 [56 P.2d 1158, 1162]; *Hillebrand* v. *Knapp,* 65 S.D. 414 [274 N.W. 821, 822, 112 A.L.R. 1104]; *Muench* v. *Public Service Commission,* 261 Wis. 492 [53 N.W.2d 514, 519] affd. 55 N.W.2d 40.)

[2]Article XV, section 2: "No individual, partnership, or corporation, claiming or possessing the frontage or tidal lands of a harbor, bay, inlet, estuary, or other navigable water in this State, shall be permitted to exclude the right of way to such water whenever it is required for any public purpose, nor to destroy or obstruct the free navigation of such water; and the Legislature shall enact such laws as will give the most liberal construction to this provision, so that access to the navigable waters of this State shall be always attainable for the people thereof."

[3]Civil Code section 3479 (unlawful obstruction with free passage or use of navigable waterway is nuisance); Penal Code section 370 (same); Harbors and Navigation Code section 131 (obstruction of navigable waterway is misdemeanor).

[4](E.g., *McGahhey* v. *McCollum,* 207 Ark. 180 [179 S.W.2d 661, 664]; *Kelley* ex rel. *MacMullan* v. *Hallden, supra,* 214 N.W.2d at p. 858, fn. 2; *Rushton, Hoffmaster* v. *Taggart,* 306 Mich. 432 [11 N.W.2d 193, 195] (stream only capable of floating logs during seasonal high water periods); *Moore* v. *Sanborne,* 2 Mich. 519, 525; *St. Lawrence Shores, Inc.* v. *State,* 60 Misc.2d 74 [302 N.Y.S.2d 606, 612] (navigable during ice-free season); *James Frazee Milling Co.* v. *State,* 122 Misc. 545 [204 N.Y.S. 645, 648]; *Logan* v. *Chas. K. Spaulding Logging Co.* (1920) 100 Ore. 731 [190 P. 349, 350]; *American Red Cross* v. *Hinson* (1938) 173 Tenn. 667 [122 S.W.2d 433, 435]; *Monroe* v. *State,* 111 Utah 1 [175 P.2d 759, 761]; *Kemp* v. *Putnam,* 47 Wn.2d 530 [288 P.2d 837, 840]; *Munninghoff* v. *Wisconsin Conservation Commission,* 255 Wis. 252 [38 N.W.2d 712, 714]; *Diana Shooting Club* v. *Husting,* 156 Wis. 261 [145 N.W. 816, 819]; *Willow River Club* v. *Wade,* 100 Wis. 86 [76 N.W. 273, 276] ("it is not essential to the public easement that this capacity be continuous throughout the year, but it is sufficient that the stream have periods of navigable capacity ordinarily recurring from year to year, and continuing long enough to

on the subject have expressed the same principle. (E.g., 55 Ops.Cal.Atty. Gen. 293, 301-302; Cal. Pleasure Boating Law (Cont. Ed. Bar 1963) § 4.54, p. 366 ("Neither the existence of rapids or sandbars, nor the necessity of portages . . . nor the availability of the stream only at certain times during the year, impairs whatever right of navigation otherwise exists."); 65 C.J.S. Navigable Waters, § 6(c), pp. 76-77.)

No expressly contrary authority has been cited by respondent or located by this court. In view of the aforementioned state policy considerations, this rule is both logical and persuasive, and it is therefore part of the California definition of navigability expressed in *Mack*.

■ The duration of navigability in fact required to make a stream navigable in law cannot be stated with precision; the characteristics of the stream and circumstances of its suitability for public use will vary from case to case, and remain a factual question. (Cf. *U. S.* v. *Appalachian Power Co., supra,* 311 U.S., at p. 404 [85 L.Ed. at p. 251].) An early California case, refusing to find a stream navigable for purposes of injunctive relief sought by lower riparian owners against alleged nuisances by an upstream slaughterhouse and mill, stated: "it must be capable of being used *to an extent that would make it of some value as a highway*; or at least a stream that would be so used for *some portions of the year*. That it could be so used for a few days in the rainy season, and by the aid of dams would not make the river navigable." (*People* v. *Elk River M. & L. Co.,* 107 Cal. 221, 224 [40 P. 531] (italics added); cf. *Miller & Lux* v. *Enterprise etc. Co.,* 142 Cal. 208, 212 [75 P. 770] (basing a finding of navigability on evidence that "boats and barges did at times, *at certain seasons of the year,* pass up and down" the stream (italics added)); *Willow River Club* v. *Wade, supra,* 100 Wis. 86 [76 N.W. 273, 276].) Of course, navigability in law should not be based on mere navigability in fact during infrequent or brief periods of high or flood waters. (*Oklahoma* v. *Texas, supra,* 258 U.S., at pp. 589, 591 [66 L.Ed. at pp. 777-779]; *Cardwell* v. *County of Sacramento,* 79 Cal. 347, 349 [21 P. 763].) Cases cited by respondents fall into this latter category.[5]

■ The court below found that in its *natural state,* the Russian River from Alexander Valley Bridge to the Del Rio Dam is navigable in

make it useful as a highway"); *Campbell Brown & Co.* v. *Elkins,* 141 W.Va. 801 [93 S.E.2d 248, 266].)

[5]Respondents' assertion that a conclusion of navigability in law here will result in similar status for "every freshet of water in any defined water course throughout the State of California during winter seasons at flood stage" is thus without merit.

fact for approximately nine months every year (under the recreational boating test of navigability). This is a sufficient period to make it suitable, useful and valuable as a public recreational highway for most of the year, and therefore it is navigable in law. The effect of this conclusion is clear: "It hardly needs citation of authorities that the rule is that a navigable stream may be used by the public for boating, swimming, fishing, hunting and all recreational purposes." (*People* ex rel. *Baker* v. *Mack, supra,* 19 Cal.App.3d at p. 1045; *Marks* v. *Whitney, supra,* 6 Cal.3d at p. 259.)

As the conclusion of the court below as to navigability in law must be reversed on this ground, it is not necessary for this court to consider the issue of natural navigability versus navigability in fact only with improvements. Nothing said herein is intended to express any opinion on that issue. Nor is this court required to consider the further questions raised by appellants concerning public navigational rights based on custom, implied dedication or prescription.

■ Respondents have devoted a substantial portion of their argument on appeal to the matter of title to the stream bed, asserting that a finding of navigability will result in a taking of private land. As in both the *Bohn* and *Mack* cases, however, the question of title to the bed of a navigable stream is not raised in this action to determine public use rights, nor is it relevant to the issues herein presented for decision. (*People* ex rel. *Baker* v. *Mack, supra,* 19 Cal.App.3d at p. 1050; *Bohn* v. *Albertson, supra,* 107 Cal.App.2d at p. 749.) The ownership of the bed is not determinative of public navigational rights, nor vice versa. (*Forestier* v. *Johnson,* 164 Cal. 24, 31-32, 39 [127 P. 156]; *Bohn* v. *Albertson, supra,* 107 Cal.App.2d at pp. 742-743, 752-753; *Southern Idaho F. & G. Ass'n.* v. *Picabo Livestock, Inc., supra,* 528 P.2d at p. 1298; *Wilbour* v. *Gallagher,* 77 Wn.2d 306 [462 P.2d 232, 238]; 55 Ops.Cal.Atty.Gen., *supra,* at p. 294; 36 Ops.Cal.Atty.Gen. 20, 26.) Thus, nothing said herein is intended to express any opinion on the title to the bed of the river section in question.

### III

*Appellants' Rights in Use of District*
*Property Are Adequately Protected by*
*the Judgment Entered Below*

Appellants' final contention is that the trial court erred in failing to grant requested declaratory relief concerning their rights to utilize the

District's beach and parking lot property. The court ruled that appellants, as members of the public, do have the right to use the District property, subject to reasonable regulations (to be reviewed by the court, which retained jurisdiction) by the District as to time, place, and manner of public use. The preliminary injunction, forbidding interference with such use, was continued until regulations are established.

The ruling of the court fully protects the rights of appellants. As observed earlier, the state has absolute power to control, regulate, and utilize navigable waters within the terms of its public trust, subject only to the paramount supervisory powers of the federal government. (*Marks v. Whitney, supra,* 6 Cal.3d at p. 260; *Colberg, Inc.* v. *State of California ex rel. Dept. Pub. Wks., supra,* 67 Cal.2d at pp. 416-417.) Under the statutes creating the District, the Legislature authorized the District's board of directors to "make and enforce all rules, regulations, and bylaws necessary for the administration, government, and protection of the property, improvements, and facilities under its management or belonging to the district." (Pub. Resources Code, § 5782.21.) Until evidence to the contrary is presented, it must be presumed that the regulations promulgated by the District will meet the requirements of all applicable constitutional, statutory and decisional laws, and will give due regard to the public navigational easement herein described.

The judgment is affirmed insofar as it provides that plaintiffs (appellants), as members of the public, have rights to use the District's property for boating, portage, access to and egress from the river, boat landing, launching and car parking, based on the public ownership and park status of such property, subject to the District's right as a government entity reasonably to regulate the time, place and manner of such public uses of such property. The judgment is further affirmed as respects the preliminary injunction and retained jurisdiction. In all other respects, the judgment is reversed.

Appellants to recover their costs on appeal.

Christian, J., and Emerson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.